#25618-aff in pt, rev in pt & rem-SLZ

**2011 S.D. 14**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

TROY BRUCE,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE LORI S. WILBUR
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General                    Attorneys for plaintiff
Pierre, South Dakota                    and appellee.

JACK C. MAGEE of
Magee Law Office, LLC
Pierre, South Dakota

AL ARENDT                    Attorneys for defendant
Pierre, South Dakota                    and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 10, 2011

OPINION FILED **04/06/11**

#25618

ZINTER, Justice

[¶1.]      Troy Bruce was convicted of fifty-five counts of knowing possession of child pornography.  He appeals challenging the circuit court's admission of other acts evidence, the court's limitation on cross-examination of an alleged third-party perpetrator, the failure to bring his case to trial within 180 days of his initial appearance, and the court's imposition of a maximum sentence on ten counts resulting in a 100-year sentence.  We affirm in part, reverse in part, and remand for resentencing.

*Facts and Procedural History*

[¶2.]      On December 23, 2008, police executed a search warrant at Bruce's apartment after Carol Pulscher, his roommate and estranged girlfriend,[1] reported seeing child pornography on Bruce's computer.  The search revealed child pornography on discs (CDs and DVDs) in Bruce's locked safe and footlocker.  The State charged Bruce with fifty-five counts of knowing possession of child pornography in violation of SDCL 22-24A-3.  All charges were based on one DVD found in the footlocker.  The child pornography found in the safe was introduced as other acts evidence.  None of the child pornography found on the computer was introduced at trial.

[¶3.]      Bruce initially appeared on December 24, 2008.  At his arraignment on a superseding indictment, the court scheduled a jury trial for May 19.  As a

---

1.     At the time Pulscher reported the child pornography, Bruce and Pulscher had broken off their relationship but were still sharing the apartment. Bruce described their relationship as "distant."  Pulscher described their relationship as being "roommates."

-1-

result of pretrial motions, requests for continuances, and a mistrial, Bruce's trial was held on December 7, 2009, 90 days after the mistrial but 348 days after his initial appearance.

[¶4.]     One pretrial issue involved the State's use of other acts evidence in the form of a disc containing child pornography. The disc was found in Bruce's safe and was stained with his semen. Another pretrial issue involved the court's limitation on Bruce's cross-examination of Pulscher. Because no evidence of child pornography on the computer was to be admitted at trial, the court limited Bruce's cross-examination of Pulscher regarding her prior statements about child pornography she had observed on the computer.

[¶5.]     The jury found Bruce guilty of all fifty-five counts. On Counts 1 through 10, Bruce received maximum ten-year sentences to be served consecutively for a total of 100 years. Bruce also received maximum ten-year sentences on the remaining forty-five counts to be served concurrent with each other and concurrent with the sentences on Counts 1 through 10. The sentences on the forty-five counts were suspended.

[¶6.]     Bruce raises four issues on appeal:

1.     Whether the circuit court abused its discretion in admitting other acts evidence of the child pornography disc that was stained with Bruce's semen.

2.     Whether the circuit court abused its discretion in limiting cross-examination of Carol Pulscher.

3.     Whether the circuit court erred in denying Bruce's motion to dismiss for failing to try the case within 180 days of his initial appearance.

4. Whether the maximum sentence on ten of the fifty-five counts was cruel and unusual punishment.

*Decision*

*1. Other Acts Evidence*

[¶7.] Bruce's semen was discovered on one of the child pornography discs found in his safe. The circuit court ruled that the semen-stained disc was admissible other acts evidence. The court further ruled that the stain would be referred to as DNA rather than semen. However, on the first day of the second trial, the court modified its ruling and allowed the State to disclose that the stain was Bruce's semen. [2] The court ruled that the evidence was relevant to prove identity (who possessed the disc) and knowledge that the discs contained pornographic content. The court performed the requisite balancing and ruled that any prejudice did not substantially outweigh the evidence's probative value. Bruce contends that the circuit court abused its discretion in allowing the jury to hear evidence that the stain was Bruce's semen.

[¶8.] SDCL 19-12-5 (Rule 404(b)) provides that evidence of other acts is not admissible to prove character of a person, but is admissible for other purposes, such as proof of identity and knowledge. "To determine the admissibility of other acts evidence, the court must . . . determine: (1) whether the intended purpose is relevant to some material issue in the case, and (2) whether the probative value of the evidence is substantially outweighed by its prejudicial effect." *State v. Huber*,

---

2. Bruce strenuously complains that the circuit court changed its initial ruling. Bruce cites no authority requiring a trial court to adhere to an earlier evidentiary ruling following a mistrial. The only relevant issue is whether the trial court abused its discretion in admitting the evidence at the trial in which the defendant was convicted.

2010 S.D. 63, ¶ 56, 789 N.W.2d 283, 301. "Once the evidence is found relevant, however, the balance tips emphatically in favor of admission unless the dangers set out in Rule 403 'substantially' outweigh probative value." *State v. Wright*, 1999 S.D. 50, ¶ 14, 593 N.W.2d 792, 799 (citing Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 8.28, at 118-19 (Rev. ed. 1998) (quoting Fed. R. Evid. 403)). "The party objecting to the admission of evidence has the burden of establishing that the trial concerns expressed in [Rule 403 (in this case prejudice)] substantially outweigh probative value." *Id.* ¶ 16. Evidence does not cause danger of unfair prejudice "merely because its legitimate probative force damages the defendant's case." *Id.* For evidence to cause unfair prejudice, it must persuade the jury by illegitimate and unfair means. *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 30, 764 N.W.2d 474, 484.

[¶9.] Bruce argues that identifying the stain as his semen (rather than DNA) did not enhance the probative value of the evidence. He also argues that identifying the stain as semen caused undue prejudice because it allowed the jury to engage in "rank speculation" about how the semen got there and what it meant. Thus, he claims that the evidence had little if any probative value that was substantially outweighed by unfair prejudice. We disagree.

[¶10.] In *State v. Dubois,* 2008 S.D. 15, 746 N.W.2d 197, the defendant claimed no knowledge of pornographic materials on his computer. He claimed that someone else downloaded the pornography or that it was downloaded by mistake. *Id.* ¶ 21. However, the defendant had been involved in an uncharged act involving a "sexually charged" internet chat with a fifteen-year-old boy. *Id.* ¶ 24 n.6. We

affirmed admission of the other sexual act to prove identity as well as knowledge of the content and presence of child pornography on the defendant's computer. *See id.* ¶¶ 21, 25. Considering the defendant's claimed lack of knowledge, we agreed with the circuit court's findings of relevancy and lack of sufficient prejudice to overcome the evidence's probative value. *Id.* ¶¶ 22, 24-25.

[¶11.] Like *Dubois*, we see no abuse of discretion in the admission of Bruce's sexually charged prior act to prove identity and knowledge of the content of the disc. A substantial number of the charged acts involved possession of videos of adult males masturbating on children. The presence of Bruce's semen made it more probable that Bruce had been sexually stimulated by the discs' content. Thus, this was a "sexual fingerprint" that was highly probative of the identity of the possessor and the possessor's knowledge of the discs' pornographic content. Further, this type of sexual fingerprint does not tend to prove such issues by illegitimate or unfair means.

[¶12.] Bruce also argues that he was denied a "statutory" right to have the stain tested. We first note that procedurally, the State provided Bruce with advance notice that the stain was very small and could be destroyed during testing. Bruce responded that he would "tentatively waive" the ability to test the stain. He stated that if he did not provide a final answer by eight o'clock a.m. on July 24, 2009, he was "probably going to waive" his right to independently test the stain. Bruce did not make contact with the prosecution by eight a.m., and the prosecution proceeded with the testing.

[¶13.] With respect to the merits, Bruce has not cited a statute or case suggesting reversible error whenever prosecution testing necessarily destroys evidence and precludes further testing.[3] Instead, Bruce relies on the narrower duty of the State to use good-faith in preserving evidence that could be exculpatory. *See Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281 (1988). *Youngblood*, however, is inapposite because Bruce does not allege that the State destroyed the evidence in bad faith. *See Carlson v. Minnesota*, 945 F.2d 1026, 1029 (8th Cir. 1991). Moreover, courts have generally not found statutory or constitutional violations when in good faith, evidence is necessarily destroyed in the testing process making it unavailable for further testing by the defendant. *See, e.g., Baker v. State*, 250 Ga. 187, 297 S.E.2d 9 (1982) (citing *Partain v. State*, 238 Ga. 207, 232 S.E.2d 46 (1977)); *State v. Carlson*, 267 N.W.2d 170 (Minn. 1978) (discussing cases).

[¶14.] In this case Bruce does not allege that the evidence was exculpatory, that the State acted in bad faith, or that it was unnecessary to destroy the evidence as a part of the testing process. Furthermore, the State provided notice before the testing procedure was employed. Yet Bruce did not object or request an expert of his choosing to be present during testing. Bruce has not identified a statutory or constitutional right that was violated.

---

3. Bruce cites *State v. Hanson*, 278 N.W.2d 198 (S.D. 1979). But *Hanson* involved the right to independently test marijuana, a contraband substance. *Id.* at 199. Therefore, *Hanson's* holding was specifically "restricted to cases where the substance itself must be contraband in order to convict the defendant, and whether the alleged contraband is exculpatory depends on expert opinion." *Id.* at 200.

## 2. Cross-examination of Carol Pulscher

[¶15.] Bruce presented a defense alleging that Pulscher was a third-party perpetrator who had access to his footlocker, safe, and computer. Bruce also argued to the court that Pulscher had given inconsistent statements about seeing child pornography "videos" on his computer. Bruce pointed out that expert evidence reflected that there were "images" but no "videos" of child pornography on his computer. Therefore, Bruce speculated that if Pulscher incorrectly stated that she had observed child pornography "videos" on the computer, she must have obtained that knowledge from accessing his footlocker and safe. Based on this speculation, Bruce contended that Pulscher's purported inconsistency was proof that she was a third-party perpetrator who planted the CDs and DVDs in the footlocker and safe.

[¶16.] The circuit court allowed the Pulscher third-party perpetrator defense through Pulscher and other witnesses.[4] The court specifically allowed cross-examination of Pulscher regarding her access to the safe and the footlocker. But because no pornography was introduced from the computer, the court precluded the State and Bruce from questioning Pulscher about what she had viewed on the computer. The court reasoned that such evidence was not relevant and would distract the jury from the real issue whether Bruce knowingly possessed the child

---

4. The court permitted Bruce to call witnesses and cross-examine Pulscher to establish that she had access to the footlocker and the safe, the sources of all evidence relating to charged and uncharged acts. Bruce also examined witnesses (including Pulscher) to establish that Pulscher not only had access to the computer, but she frequently "burned" CDs. Bruce was allowed to question Pulscher whether she had burned discs and put them in the footlocker to frame Bruce.

pornography on the DVD found in his footlocker.[5] On appeal, Bruce argues that the circuit court's limitation on cross-examination precluded him from presenting his third-party perpetrator defense. *See State v. Luna*, 378 N.W.2d 229, 231-234 (S.D. 1985) (analyzing a defendant's argument that "the trial court violated his Sixth and Fourteenth Amendment rights by excluding certain third-party perpetrator evidence that he sought to introduce").

[¶17.] "[T]here is no rule flatly prohibiting third-party perpetrator evidence in South Dakota. Rather, if the proffered evidence is relevant but challenged as unfairly prejudicial, confusing or misleading, we require trial courts to balance the probative value of the evidence against the possible prejudicial effect." *State v. Fisher*, 2010 S.D. 44, ¶ 14, 783 N.W.2d 664, 669 (citation omitted). "Pursuant to SDCL 19-12-3 [Rule 403], the evidence should 'be excluded only if its probative value is substantially outweighed by the harm likely to result from its admission,'" which includes the danger of misleading the jury. *State v. Faulks*, 2001 S.D. 115, ¶ 18, 633 N.W.2d 613, 619 (quoting *State v. Braddock*, 452 N.W.2d 785, 789 (S.D. 1990)). A trial court's evidentiary ruling that limits cross-examination will be reversed only when there is a clear abuse of discretion as well as a showing of prejudice to the defendant. *State v. Fasthorse*, 2009 S.D. 106, ¶ 14, 776 N.W.2d 233, 238. "Prejudice results when a reasonable jury probably would have had a

---

5. Bruce again complains that the circuit court changed its ruling between the two trials. But as previously noted, the only relevant issue is whether the court abused its discretion in making the evidentiary ruling that affected the outcome of the trial in which he was convicted.

significantly different impression if otherwise appropriate cross-examination had been permitted." *State v. Carter*, 2009 S.D. 65, ¶ 31, 771 N.W.2d 329, 338-39.

[¶18.]        In this case, the circuit court balanced the probative value of the evidence against the dangers of confusion.  Our review of the evidence reflects little if any indication of inconsistent statements.  The record reflects that Pulscher never stated she saw "videos" play on the computer or that she opened any of the files.  Rather, when viewed in context, her prior statements to the police indicated that she saw images that she *thought* were downloaded videos *because* they were in a video section of a computer program.  With respect to her grand jury testimony, she testified that she saw file names rather than actually viewing "videos."  And with respect to her testimony at the first trial, she indicated that she had observed still images rather than videos.  Thus, the complete record reflects a lack of inconsistency in the prior statements.  At best, the proposed cross-examination would have involved nothing more than counsel's argument with Pulscher about another possible meaning of her words.  Considering this fragile factual foundation together with the speculative assumptions necessary for inconsistent computer statements to support the theory that Pulscher planted pornography in the footlocker, the circuit court did not abuse its discretion in restricting the cross-examination.  *See State v. Garza*, 1997 S.D. 54, ¶ 29, 563 N.W.2d 406, 412 (affirming exclusion of evidence where there was no foundation for admission of third-party perpetrator evidence).  Additionally, considering the physical evidence together with Bruce's actual cross-examination of Pulscher, we see no possibility

that the jury would have reached a different conclusion had more extensive cross-examination been permitted.

### 3. The 180-day Rule

[¶19.]     Bruce argues that the circuit court erred in failing to dismiss the indictment because the time between his initial appearance and ultimate trial exceeded the 180-day period allowed under SDCL 23A-44-5.1.  "We review the determination . . . whether the 180 day period . . . expired as well as what constitutes good cause for delay under a de novo standard."  *State v. Andrews*, 2009 S.D. 41, ¶ 6 n.1, 767 N.W.2d 181, 183 n.1.

[¶20.]     On December 24, 2008, Bruce made an initial appearance on the complaint.  Approximately one month later, the circuit court set a May 19 trial date.  On April 7, Bruce asked to reschedule the trial and agreed to a July 27 trial date.  On July 28, Bruce and the State jointly requested another continuance and agreed to a September 8 trial date.  The trial commenced on September 8, but resulted in a mistrial that same day.  Bruce's jury trial was ultimately held on December 7-9.  Accordingly, 258 days expired between Bruce's initial appearance and the mistrial.  An additional 90 days expired between the mistrial and the ultimate trial.  And a total of 348 days expired between the initial appearance and the ultimate trial.

[¶21.]     Bruce contends that the circuit court erred in excluding the time taken to resolve his defense motions.  Bruce contends those days should not be excluded because they did not "cause" any additional delay.  Bruce points out that trial dates were set before his motions and his motions did not require the previously set trial dates to be altered.  *See* SDCL 23A-44-5.1(4)(a) (only excluding days "resulting

from" certain defense motions). Bruce also contends that the circuit court erroneously excluded certain days between the mistrial and ultimate trial to accommodate the pregnancy of a State witness. Bruce argues that the pregnancy continuance did not qualify as the "unavailability of evidence material to the state's case" and the continuance was not reduced to a written order as required by SDCL 23A-44-5.1(4)(c).

[¶22.] We do not address Bruce's contentions because a mistrial occurred and neither party acknowledges the correct method of counting time when a mistrial has been declared. *See* SDCL 23A-44-5.1(3). When the mistrial rule is applied with the rule excluding days for defense-requested continuances, both of Bruce's trials were held within the 180-day limit.

[¶23.] SDCL 23A-44-5.1(1) and (2) require that those charged with crimes be brought to trial within 180 days of their initial appearance. However, the court must exclude "[t]he period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel provided it is approved by the court and a written order filed." SDCL 23A-44-5.1(4)(b). In this case, at the April 7 hearing, the defense agreed to continue the May 19 trial to July 27, which resulted in a delay of 69 days (May 19 to July 27). A conforming order was filed. Similarly, at the July 28 hearing, the defense requested a continuance resulting in a postponement of the trial until September 8, a period of 42 days. A conforming order was filed. Therefore, those 111 days (69+42) are excluded. *Id.*

[¶24.] Further, if the "defendant is to be tried again following a mistrial, . . . [the 180-day] period shall commence to run from the date of the mistrial[.]" SDCL

23A-44-5.1(3). *See also State v. Shilvock-Havird,* 472 N.W.2d 773, 776 n.1 (S.D. 1991) (stating that upon 23A-44-5.1(3)'s effective date, if a "defendant is to be tried again following a mistrial, . . . such period [180 days] shall commence to run from the date of the mistrial[.]"). As the Nebraska Supreme Court observed under its virtually identical rule: "Once a mistrial is granted, the speedy trial clock is restarted. . . . [I]f a defendant 'is to be tried again following a mistrial . . . ,' the 6-month period 'shall commence to run from the date of the mistrial[.]'" *State v. Dockery*, 273 Neb. 330, 333, 729 N.W.2d 320, 323 (2007) (citing Neb. Rev. Stat. § 29-1207(3)).

[¶25.]     Consequently, a new 180-day clock began when Bruce's mistrial was declared. SDCL 23A-44-5.1(3). Because a new clock started on the day of the mistrial, the 90 days between the September 8 mistrial and the December 7 retrial were chargeable against the new 180-day time period allowed for retrial rather than against the time allowed for the first trial. As a result, only 258 days (348-90 = 258) are chargeable against the 180-day time period allowed for the first trial, and the remaining ninety days are chargeable against the second 180-day time period allowed for the retrial.

[¶26.]     Applying excluded days to the appropriate time periods, 111 of the 258 days used for the first trial must be excluded because those 111 days resulted from defense requested continuances. Thus, only 147 (258-111 = 147) of the 180 days available for the first trial were used. Further, when the mistrial occurred, the clock restarted and only 90 of the 180 days available for retrial were used. Because

-12-

both trials were held within their respective 180-day limits, the circuit court did not err in denying the motion to dismiss.

### 4. Cruel and Unusual Punishment

[¶27.] Bruce was convicted of possessing one DVD containing fifty-five videos of child pornography. He received the ten-year maximum sentence on all fifty-five counts. Forty-five of the sentences were suspended, but the sentences on the remaining ten counts were to be served consecutively resulting in a total sentence of 100 years. Bruce contends that this sentence was cruel and unusual punishment under the Eighth Amendment.

[¶28.] "Sentencing decisions are perhaps the most difficult responsibility for trial judges, encompassing circumstances both obvious and elusive." *State v. Bonner*, 1998 S.D. 30, ¶ 11, 577 N.W.2d 575, 578. "It is not for us to engage in appellate resentencing, or to 'micromanage the administration of criminal justice' in South Dakota, even when individual trial judges impose widely different punishments for the same offense." *Id.* (quoting *State v. DePiano*, 187 Ariz. 27, 31, 926 P.2d 494, 498 (1996)). Instead, "[w]e take an extremely deferential review of sentencing—generally, a sentence within the statutory maximum will not [be] disturbed on appeal." *Id.* ¶ 10.

[¶29.] With respect to Eighth Amendment claims, we first review the sentence for proportionality:

> [W]e first determine whether the sentence appears grossly
> disproportionate. To accomplish this, we consider the conduct
> involved, and any relevant past conduct, with utmost deference
> to the Legislature and the sentencing court. If these
> circumstances fail to suggest gross disproportionality, our
> review ends. If, on the other hand, the sentence appears grossly

> disproportionate, we may, in addition to examining the other *Solem* factors, conduct an intra-and inter-jurisdictional analysis to aid our comparison or remand to the circuit court to conduct such comparison before resentencing. We may also consider other relevant factors, such as the effect upon society of this type of offense.

*Id.* ¶ 17. The threshold question of proportionality involves a comparison of "the gravity of the offense . . . to the harshness of the penalty." *Ewing v. California*, 538 U.S. 11, 28, 123 S. Ct. 1179, 1189, 155 L. Ed. 2d 108 (2003). This involves examining "'objective factors to the maximum possible extent,' comparing the sentence with the criminal acts defendant committed and the consequences of those acts upon the victims and society." *Bonner*, 1998 S.D. 30, ¶ 22, 577 N.W.2d at 581 (quoting *Harmelin v. Michigan,* 501 U.S. 957, 1000, 111 S. Ct. 2680, 2704, 115 L. Ed. 2d 836, 868 (1991) (quoting *Rummel v. Estelle,* 445 U.S. 263, 274-75, 100 S. Ct. 1133, 1139, 63 L. Ed. 2d 382 (1980))). In fashioning an appropriate sentence, courts must also look to the character and history of the defendant. *Id.* ¶ 19. This requires an examination of a defendant's "general moral character, mentality, habits social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record" as well as rehabilitation prospects. *Id.* "[I]ncapacitation and deterrence are [also] valid goals of sentencing." *Id.* ¶ 21.

[¶30.]     With respect to the penalty for possession of child pornography, we have noted that "[c]rimes against children, especially sex offenses, have increased nationwide by epidemic proportions"; as a result, our Legislature has imposed significant penalties for persons who exploit children for sexual gratification. *State v. Blair,* 2006 S.D. 75, ¶ 24, 721 N.W.2d 55, 62. Further, "each act of downloading

an image of child pornography is a separate offense." *State v. McKinney,* 2005 S.D. 74, ¶ 27, 699 N.W.2d 460, 468 (citing *State v. Martin,* 2003 S.D. 153, ¶ 42, 674 N.W.2d 291, 303). "That is because the legislative rationale of protecting the children exploited during the production process 'extends to each child in each picture.'" *Id.* (quoting *Martin,* 2003 S.D. 153, ¶ 42, 674 N.W.2d at 303). *See also Dubois,* 2008 S.D. 15, ¶ 42, 746 N.W.2d at 210.

[¶31.]      However, SDCL 22-24A-3 criminalizes a wide range of misconduct involving different levels of seriousness and culpability. The same statute not only prohibits possession of child pornography, but also manufacturing and distribution of those materials. *Id.* Additionally, the seriousness of the prohibited sexual acts depicted ranges from lewd exhibitionism, to masturbation, intercourse, sadism, masochism, sexual bestiality, incest, sadomasochistic abuse and sexual battery. SDCL 22-24A-2(16).[6] Finally, the Legislature prescribed a wide range of penalties from probation and no incarceration to ten years in the penitentiary. *See* SDCL 22-6-1(7); SDCL 22-24A-3.

---

6.      Prohibited sexual acts include:

> [A]ctual or simulated sexual intercourse, sadism, masochism, sexual bestiality, incest, masturbation, or sadomasochistic abuse; actual or simulated exhibition of the genitals, the pubic or rectal area, or the bare feminine breasts, in a lewd or lascivious manner; actual physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast with the intent to arouse or gratify the sexual desire of either party; defecation or urination for the purpose of creating sexual excitement in the viewer; or any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed.

SDCL 22-24A-2(16).

[¶32.]     When such statutory ranges are established, the legislative intent is that "the more serious commissions of [the] crime . . . deserve sentences at the harsher end of the spectrum. '[I]t is a precept of justice that punishment for the crime should be graduated and proportioned to the offense.'" *Bonner*, 1998 S.D. 30, ¶ 25, 577 N.W.2d at 582 (quoting *Weems v. United States,* 217 U.S. 349, 367, 30 S. Ct. 544, 549, 54 L. Ed. 793, 798 (1910)). "Thus a trial court's sentence ought to be proportionate to the particulars of the offense and the offender." *Id.  See Blair*, 2006 S.D. 75, ¶ 27, 721 N.W.2d at 63 (applying this rule to a case involving child pornography). "Imposing the maximum possible term where the circumstances of the crime only justify a sentence at a lower range violates legislative intent to reserve the most severe sanctions for the most serious combinations of the offense and the background of the offender." *Bonner*, 1998 S.D. 30, ¶ 25, 577 N.W.2d at 582.  Further, we now adopt Justice Konenkamp's recommendation "that courts look at two additional determinants when assessing the seriousness of a child pornography offense: (1) the specific nature of the material and (2) the extent to which the offender is involved with that material." *Blair*, 2006 S.D. 75, ¶ 83, 721 N.W.2d at 76 (Konenkamp, J., concurring in result). "[T]he more depraved and invasive the abuse and the more involved the offender is with the material depicting it, the greater the seriousness of the offense." *Id.*

[¶33.]     With respect to the seriousness of this offense, the pornography involved much more than lewd images but less than the worst possible material covered by the statute.  The disc on which the conviction was based contains two separate videos.  One involves three post-pubescent girls play acting a scene in

which one girl forces the other two to disrobe and display their anal and vaginal openings. The second video is a compilation of videos. Most of the scenes involve adult males masturbating on pre-pubescent females (some infants), with a few scenes of fellatio, cunnilingus and intercourse. One scene involves a pre-pubescent boy involved in fellatio. Because each scene is extremely short (a matter of seconds), it is not apparent whether this compilation was downloaded as one video or whether each scene was edited together by Bruce.

[¶34.] With respect to Bruce's involvement, he was convicted of possessing the one DVD containing fifty-five images. Although thirty other discs containing child pornography images were found, the court "consider[ed] Counts 1 through 10 as one act" for the purpose of determining parole eligibility.[7] Additionally, there was no evidence that Bruce manufactured or distributed child pornography. Finally, there was no evidence suggesting that Bruce had ever sexually abused a child, had sexual contact with a child, or solicited a child for sexual images. This was a case of simple possession of images.

[¶35.] Bruce's character and history reflect that he was a divorced forty-eight year old with three children, one who was still a minor. Other than a careless driving offense, Bruce had no prior criminal history. He was a former member of the National Guard and a veteran who had served in Saudi Arabia and Iraq during Operation Desert Storm. Following his military service, Bruce obtained a bachelor of sciences degree in nursing and began work as an emergency room nurse. At the

---

7. The court considered the suspended forty-five counts as separate transactions.

time of this offense, he had changed his type of nursing but was still gainfully employed as a nurse at a hospital. Although a psychosexual evaluation was attempted, the evaluator indicated that an assessment of Bruce's rehabilitation prospects was premature until the appeals process ended. The evaluator was also unable to provide information regarding risk factors or treatability.

[¶36.] Other gross disproportionality challenges to maximum or near maximum sentences have failed because they involved a combination of more serious conduct and a more criminally culpable offender. For example, in *Dubois* we found no gross disproportionality in a maximum sentence of ten years on each of three counts, to be served consecutively. 2008 S.D. 15, ¶ 40, 746 N.W.2d at 209-10. But those "charges derived from contact (via telephone and internet) Dubois had with a twelve to thirteen-year-old" where Dubois solicited the child for sexual images and succeeded in obtaining them. *Id.* ¶ 44. "Furthermore, Dubois unsuccessfully attempted to set up face-to-face meetings with the minor." *Id.* Unlike Bruce, we emphasized, "Dubois was more than a passive participant; he actively preyed on at least one child." *Id.* ¶ 46.

[¶37.] In *State v. McKinney*, we found no gross disproportionality in a middle-range sentence of five years on each of twenty counts of possession of child pornography, totaling 100 years. 2005 S.D. 74, ¶ 32, 699 N.W.2d at 470. But unlike Bruce, McKinney had not only been convicted of child pornography, the sentencing court considered a contemporaneous conviction of rape, sexual contact with a minor, and sexual exploitation of a minor. *Id.* ¶ 28. Moreover, McKinney's pornography was used not just for his own sexual gratification, but "to further the

sexual abuse of his stepdaughter." *Id.* ¶ 32. We held that McKinney's sentence was not grossly disproportionate considering that "his sexual deviance progressed from child pornography, to sexual exploitation, to sexual contact, and ultimately rape" of his stepdaughter. *Id.* ¶ 28.

[¶38.] Finally, in *State v. Blair* we found no gross disproportionality in near maximum sentences for filming children in prohibited sexual acts. 2006 S.D. 75, ¶ 1, 721 N.W.2d at 56. Although Blair was producing the pornography for his personal use, he filmed his daughter and her adolescent friends. *Id.* ¶¶ 6-11. Also, under the guise of dispensing "therapy," he "cornered" two of the girls in his basement for hours in an effort to convince them to show him their breasts and to share erotic thoughts with him. *Id.* ¶¶ 4-5. These girls also reported that he exposed himself to them and touched them inappropriately. *Id.* "Considering all the circumstances, an eight year prison term for each offense, two years less than the maximum penalty, [was] not grossly disproportionate to the crimes he committed." *Id.* ¶ 79 (Konenkamp, J., concurring in result).

[¶39.] These cases demonstrate that Bruce's maximum sentences were not reserved for the most serious combination of criminal conduct and background of the offender. We therefore conclude that this is the exceedingly rare case in which Bruce's sentence was grossly disproportionate to the "particulars of the offense and the offender." *See Bonner*, 1998 S.D. 30, ¶ 25, 577 N.W.2d at 582. Because Bruce did not present comparative information with which to conduct an intra- and inter-jurisdictional analysis, we reverse and remand to the circuit court to consider that evidence on resentencing. *See id.* ¶ 26 ("Since we have received no comparative

information to conduct the within and without analysis, we remand to the circuit court so that information can be supplied and the sentencing judge can take it into account on resentencing.").

[¶40.]     Affirmed in part, reversed in part, and remanded.

[¶41.]     GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶42.]     SEVERSON and MEIERHENRY, Justices, concur with a writing.


SEVERSON, Justice (concurring).

[¶43.]     I join in the majority opinion but write to comment on the current charging and review practices of child pornography cases in South Dakota. A significant tenet of the United States Supreme Court's jurisprudence concerning the Eighth Amendment is deference to the judgment of state legislatures in determining appropriate punishments. The South Dakota Legislature has classified possession of pornography depicting children as a class four felony, punishable by a fine of up to twenty thousand dollars and a term of up to ten years in the penitentiary. SDCL 22-24A-3, -6-1.

[¶44.]     In South Dakota, gross disparity in the sentence length for possession of child pornography exists. For example, in *State v. Martin*, 2003 S.D. 153, 674 N.W.2d 291, the defendant's sentence for possession of child pornography was a term of two years in the penitentiary with all but forty-five days in jail suspended subject to additional conditions. In the present case, the aggregate sentence is a term of 100 years in the penitentiary. Yet the facts of the two cases are similar: both involve the possession but not the manufacture or distribution of multiple

computer-based images of child pornography. The difference in the length of the sentences for these similar crimes is shocking.

[¶45.] SDCL 22-24A-3, which criminalizes the possession, manufacture, and distribution of child pornography, has not significantly changed. But this Court's interpretation of SDCL 22-24A-3, particularly our endorsement of charging each act of downloading an image of child pornography as a separate offense, has led to a dramatic escalation in the potential length of sentences for this crime. The cost to taxpayers for lengthy incarceration – in this case, a virtual life sentence – is significant.

[¶46.] In examining consecutive sentences for gross disproportionality, we should not be blind to the aggregate sentence. In *State v. Blair*, Justice Konenkamp, in a concurrence in result, examined whether imposing consecutive sentences creates an issue of gross disproportionality. 2006 S.D. 75, ¶¶ 77-78, 721 N.W.2d 55, 74-75. Although he ultimately recognized that "gross disproportionality analysis must be performed for each separate sentence" rather than the cumulative whole, he noted that consideration of the aggregate sentence may sometimes be appropriate. *Id.* ¶ 78 n.22. Also in *Blair*, Justice Sabers, in a dissent joined by Justice Meierhenry, contended that the aggregate sentence should be reviewed for gross disproportionality. *See id.* ¶ 109 n.33 (citing and discussing *State v. Bonner*, 1998 S.D. 30, 577 N.W.2d 575). Under either view, the 100-year aggregate sentence imposed in this case is grossly disproportionate.

[¶47.] Extreme gross disproportionality of the sentence to the crime invites constitutional scrutiny. *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L.

Ed. 2d 108 (2003); *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Not only does the Eighth Amendment to the United States Constitution prohibit cruel and unusual punishment, but the disparate application of SDCL 22-24A-3 in child pornography cases may also invite examination under the South Dakota Constitution: "Excessive bail shall not be required, excessive fines imposed, nor cruel punishments inflicted." S.D. Const. art. VI, § 23. This is not an excuse for the crime, but we should be open to review of aggregate penalties that conflict with constitutional principles.

[¶48.]    MEIERHENRY, Justice, joins this special writing.