#29015-a-DG
**2020 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

DYLAN M. HOLLER,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE NATALIE DAMGAARD
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.

NICOLE J. LAUGHLIN
Sioux Falls, South Dakota                 Attorney for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
MARCH 17, 2020
OPINION FILED **05/20/20**

#29015

GILBERTSON, Chief Justice

[¶1.]    Dylan Holler shot and killed a young man in the course of completing a "drug rip" and pled guilty to first-degree manslaughter. He was sentenced to 80 years in prison with 40 years suspended. He appeals his sentence, and we affirm.

**Facts and Procedural History**

[¶2.]    In August 2017, shortly after his 18th birthday, Dylan Holler and two juveniles, J.C. and R.S., drove to Bakker Park in Sioux Falls looking to purchase marijuana. The plan was to perform a "drug rip" and take the marijuana by force. Holler had a stolen gun and $1,500 cash in his possession. A friend of J.C.'s put them in contact with Jayden Eastman, who had nine grams of marijuana to sell for $130. They met Eastman at the park, then drove to a gas station so that Holler could exchange some cash for smaller bills to pay Eastman. Holler claims that at this point he had not yet decided whether he would actually rob Eastman.

[¶3.]    When the group returned to the park, Holler put a round in his gun, exited the vehicle, opened the driver's side rear passenger door holding the gun, pistol-whipped Eastman in the head, and struggled with him in an attempt to take the marijuana. The gun was discharged twice during the struggle and R.S., sitting in the other rear seat, was fatally shot in the chest and leg. Eastman forced the gun out of Holler's hand and fled the scene. Holler moved the vehicle a half block away and disposed of the gun and a spent shell casing. He then returned to R.S. and attempted CPR.

[¶4.]    When law enforcement arrived, they found R.S. on the ground, along with J.C. and Holler still at the scene. R.S. was transported to Sanford Hospital

-1-

and pronounced dead.  Officers found the gun in the park.  Holler was indicted for first-degree murder, first-degree robbery, and aggravated assault.  J.C. was charged in a separate criminal file that was later transferred to juvenile court.

[¶5.]     Holler reached a plea agreement with the State under which he pled guilty to a new charge of first-degree manslaughter and the prior indictment was dismissed.  The court ordered a pre-sentence investigation and Dr. Sarah Flynn conducted a psychiatric evaluation of Holler.  The case was set for a sentencing hearing on February 15, 2019.

[¶6.]     At this hearing, Holler called Dr. Flynn to testify in mitigation.  The circuit court considered her testimony and the contents of the pre-sentence investigation report.  The evidence revealed that Holler had a history of aggressive behavior throughout his childhood.  Holler was abused by his father and also at a daycare as a young child.  His mother was likewise a victim of abuse from Holler's father and was also abused by another boyfriend.  She had trouble disciplining and controlling Holler's behavior.  Holler attended counseling as a child, and was diagnosed with ADHD.  He was prescribed medication for ADHD at a young age, but stopped taking his medication after he turned 18 because he could no longer afford the medication after losing insurance coverage.

[¶7.]     In 2010, Holler was placed on probation for a simple assault.  After violating his probation conditions, Holler was placed in an intensive supervision program, and was eventually sent to Summit Oaks behavioral center, where he successfully completed that program at age 14.  After a 2016 burglary conviction, Holler was placed at McCrossan Boys Ranch in Sioux Falls.  While there he had one

minor in possession charge, but completed the program successfully. Holler was released from McCrossan a month before this incident.

[¶8.] Holler began drinking alcohol at age 14, but has not had problems with alcohol addiction. He began smoking marijuana around the same time, using daily by age 16 and consistently when not in residential programs. He experimented with drugs throughout his teenage years and had used methamphetamine and marijuana in the days leading up to this offense. The methamphetamine was still in Holler's system at the time of this offense.

[¶9.] Additionally, the court considered several victim impact statements prior to imposing a sentence of 80 years in the South Dakota State Penitentiary with 40 years suspended and credit for 536 days served. He was also ordered to pay costs and restitution totaling around $44,000. Holler appeals his sentence raising two issues restated as follows:

> 1. Whether Holler's sentence is grossly disproportionate to the offense under the Eighth Amendment.
>
> 2. Whether the circuit court abused its discretion in failing to consider Holler's individual characteristics at sentencing.

## Analysis and Decision

[¶10.] A circuit court's sentencing decision is generally reviewed for an abuse of discretion. *State v. Chipps*, 2016 S.D. 8, ¶ 31, 874 N.W.2d 475, 486. "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *State v. Delehoy*, 2019 S.D. 30, ¶ 22, 929 N.W.2d 103, 109 (quoting *Thurman v. CUNA Mut. Ins. Soc'y*, 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616).

However, whether a sentence violates the Eighth Amendment is reviewed de novo. *Delehoy*, 2019 S.D. 30, ¶ 20, 929 N.W.2d at 108.

> 1. *Whether Holler's sentence is grossly disproportionate to the offense under the Eighth Amendment.*

[¶11.]     The Eighth Amendment to the United States Constitution protects against the infliction of cruel and unusual punishments.  U.S. Const. amend. VIII.  For a defendant's sentence to violate the Eighth Amendment, "it must be grossly disproportionate to the offense."  *Delehoy*, 2019 S.D. 30, ¶ 36, 929 N.W.2d at 111.  Our inquiry for determining gross disproportionality is well established:

> "First, we look to the gravity of the offense and the harshness of the penalty." . . .  If the penalty imposed appears to be grossly disproportionate to the gravity of the offense, then we will compare the sentence to those "imposed on other criminals in the same jurisdiction" as well as those "imposed for commission of the same crime in other jurisdictions."

*Chipps*, 2016 S.D. 8, ¶ 38, 874 N.W.2d at 488-89 (quoting *Solem v. Helm*, 463 U.S. 277, 290-91, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983)).  If the threshold question does not lead to an inference of gross disproportionality, the analysis ends there.  *Id.*  "[O]ther conduct relevant to the crime" is considered in making "the threshold comparison between the crime and the sentence[.]"  *Id.* ¶ 40, 874 N.W.2d at 490.

[¶12.]     Our inquiry starts with comparing the gravity of the offense here with the sentence imposed.  *Id.* ¶ 38, 874 N.W.2d at 488.  Holler was convicted of first-degree manslaughter —a killing "[w]ithout any design to effect death, . . . but by means of a dangerous weapon"—a Class C felony under SDCL 22-16-15(3).  Class C felonies are punishable by up to life in prison and a $50,000 fine.  SDCL 22-6-1(3).

While manslaughter is less grave an offense than murder, "first-degree manslaughter is still an unjustified and unexcused killing . . . . deemed inherently violent by the South Dakota Legislature." *State v. Rice*, 2016 S.D. 18, ¶ 14, 877 N.W.2d 75, 80. "[A]s a lesser form of the highest crime, the gravity of first-degree manslaughter is relatively great on the spectrum of criminality." *Id.*

[¶13.] Holler admits that the gravity of his offense is relatively high, but asserts that the gravity alone is not determinative. Holler emphasizes that he had no intent to shoot anyone and no one foresaw the outcome of the robbery. He states that it was an "ill-conceived plan by a group of adolescents," he is remorseful, and takes full responsibility. Holler argues the Legislature intended sentencing courts to consider the individual circumstances of each case, which is why it authorized such a broad range of permissible sentences for first-degree manslaughter. But "the Eighth Amendment is not concerned with the harshness of a penalty relative to the range of punishments permitted for a particular offense." *Id.* ¶ 19, 877 N.W.2d at 82. Instead, "the harshness of the penalty refers to the penalty's relative position on the spectrum of *all permitted punishments*." *Id.* (quoting *Chipps*, 2016 S.D. 8, ¶ 37, 874 N.W.2d at 488).

[¶14.] The penalty for first-degree manslaughter ranges from no prison time to life in prison. The punishments set for more serious Class A and B felonies include mandatory life sentences or death. SDCL 22-6-1(1), (2). The 80-year sentence is well within the statutory limits, and the 40 years suspended offers Holler the possibility of release on parole in 20 years, under SDCL 24-15A-32. We cannot say that the gravity of the offense is grossly disproportionate to the

harshness of the penalty. Because the threshold question is not fulfilled, our analysis ends here.

[¶15.] Holler nonetheless argues that evolving standards of decency dictate that we should begin comparing co-defendants' sentences in cases like his, considering the fact that if the offense had occurred a month earlier, Holler's case, like J.C.'s, could have been transferred to juvenile court. He cites the United States Supreme Court's juvenile cases that created the jurisprudence treating children differently for sentencing on certain types of offenses. *See Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (holding that sentencing a fourteen year old to a mandatory term of life imprisonment for robbery violated the Eighth Amendment); *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S. Ct. 2394, 180 L. Ed. 2d 310 (2011) (holding that a suspect's age informs how a person in the suspect's position "would perceive his or her freedom to leave" when detained by law enforcement); *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (holding that sentencing a minor to life in prison violates the Eighth Amendment when the juvenile offender did not commit homicide); *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (holding that executing an offender who was a juvenile at the time he or she commits a capital offense is prohibited by the Eighth Amendment).

[¶16.] But along with the fact that none of these cases would forbid the sentence imposed here even if Holler had been under age 18 when this homicide was committed, the fact remains that Holler crossed the line drawn for adulthood before he committed this offense. As the Supreme Court noted in *Roper v.*

*Simmons*, in drawing this conclusion, "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18 . . . . however, a line must be drawn." 543 U.S. at 574, 125 S. Ct. at 1197-98. Therefore, we apply the standard Eighth Amendment analysis under which a co-defendant's sentence is irrelevant to answering the threshold disproportionality question. *Rice*, 2016 S.D. 18, ¶ 22, 877 N.W.2d at 83. The circuit court's sentence did not violate Holler's Eighth Amendment rights.

> 2. *Whether the circuit court abused its discretion by failing to consider Holler's individual characteristics at sentencing.*

[¶17.] Holler next argues that the circuit court did not properly assess his individual attributes in making a sentencing determination. Circuit courts have broad discretion in sentencing. *State v. Bruce*, 2011 S.D. 14, ¶ 28, 796 N.W.2d 397, 405-06. "[G]enerally, a sentence within the statutory maximum will not be disturbed on appeal." *Id.* (quoting *State v. Bonner*, 1998 S.D. 30, ¶ 10, 577 N.W.2d 575, 578). "[A] trial court's sentence ought to be proportionate to the particulars of the offense and the offender." *Id.* ¶ 32, 796 N.W.2d at 407 (quoting *Bonner*, 1998 S.D. 30, ¶ 25, 577 N.W.2d at 582).

[¶18.] "In order to determine the appropriate sentence, the 'sentencing court should' acquire a thorough acquaintance with the character and history of the man before it." *State v. McKinney*, 2005 S.D. 74, ¶ 17, 699 N.W.2d 460, 466 (quoting *State v. McCrary*, 2004 S.D. 18, ¶ 8, 676 N.W.2d 116, 120). The court looks at a broad range of evidence to do so:

> In determining the type and extent of punishment to be imposed, the sentencing judge may exercise wide discretion with respect to the type of information used as well as its source. He

> should have full access to the fullest information possible concerning the defendant's life and characteristics. Information which should be available to the court includes general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.

*State v. Arabie*, 2003 S.D. 57, ¶ 21, 663 N.W.2d 250, 257 (quoting *State v. Conger*, 268 N.W.2d 800, 801-02 (S.D. 1978)). Rehabilitation prospects should also be considered. *State v. Hinger*, 1999 S.D. 91, ¶ 21, 600 N.W.2d 542, 548.

[¶19.] Holler identifies many factors he believes the circuit court did not properly consider, including: his traumatic childhood; abuse by his father and at a daycare; his mother's abuse; his ADHD, which he claims delays his brain maturation by 2-3 years; and his multiple residential placements at young ages. He cites to the United States Supreme Court's juvenile jurisprudence to assert that it is unlikely this crime reflects his true character.

[¶20.] Holler also emphasizes Dr. Flynn's testimony that he is amenable to rehabilitation and thrives when he has structure, like that afforded at Summit Oaks or McCrossan. Finally, Holler claims the circuit court should have considered the empathy and remorse he has shown since the offense occurred and argues the length of the sentence diminishes his prospects of real rehabilitation. He asserts that he does not "demonstrate the most serious combination of criminal conduct and background of the offender." In response, the State emphasizes Holler's criminal record dating back to the 2010 simple assault on his mother and argues Holler has a long history of aggressive behavior.

[¶21.] The circuit court properly examined all these factors. At the sentencing hearing, the court heard testimony of Dr. Flynn's psychiatric evaluation

of Holler, multiple victim impact statements, and had the opportunity to examine the entire record before the hearing. The court found that even if the shooting itself was an accident, many intentional acts led up to it. The court emphasized that just because an offense committed at a younger age may mean a defendant has less culpability, that does not mean there is no culpability. The court acknowledged that Holler had shown empathy and maturation since the offense occurred, but noted that even with a high level of intervention his whole life, nothing seems to have changed his behavior. Before entering the sentence, the court stated: "[t]his isn't a probation case. This isn't a suspended imposition of sentence case in my mind, but I don't think this is a life sentence case either." The court expressed hope that Holler will mature over the course of his prison sentence and become more amenable to rehabilitation and less of a danger to the community.

[¶22.]     It is clear from the record that the circuit court properly and carefully examined the events surrounding the offense, Holler's character and history, and Holler's rehabilitation prospects. The circuit court did not abuse its discretion.

## Conclusion

[¶23.]     Holler's sentence of 80 years with 40 years suspended is not grossly disproportionate to the offense of first-degree manslaughter and does not violate the Eighth Amendment. Additionally, the circuit court properly reviewed all the information available at sentencing and did not abuse its discretion in crafting the sentence. We affirm.

[¶24.]     KERN, JENSEN, SALTER, and DEVANEY, Justices, concur.