# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 61

**APRIL TERM, A.D. 2020**

**May 15, 2020**

AARON JAKE BONDS, JR.,

Appellant
(Defendant),

v.                                                                                    S-19-0240

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Converse County*
*The Honorable F. Scott Peasley, Judge*

*Representing Appellant:*

> *Office of the Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.*

*Representing Appellee:*

> *Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Aaron Bonds caused a vehicle collision that killed one person and injured several others.  A jury convicted him of one count of aggravated homicide by vehicle, one count of aggravated assault and battery, and one count of possession of marijuana.  On appeal, Mr. Bonds argues that the district court abused its discretion by admitting testimony concerning whether passengers in his vehicle were wearing seatbelts.  We affirm.

*ISSUE*

[¶2]    Did Mr. Bonds open the door to admission of evidence that some of the passengers in his vehicle were not wearing seatbelts?

*FACTS*

[¶3]    Mr. Bonds, a friend, and their children—six of his and two of hers—set out on a cross-country road trip to Disneyland in July 2017.  Early on July 9th, Mr. Bonds awoke at their hotel in South Dakota before any of the children and smoked part of a marijuana cigarette.  The group loaded into their rented van and set off before sunrise, with Mr. Bonds driving.  Around 7 a.m., Mr. Bonds approached a semitruck on a two-lane highway in Converse County, Wyoming.  Mr. Bonds attempted to pass the semitruck before he noticed the white Buick travelling in the oncoming lane of traffic.  Mr. Bonds and the Buick's driver, Philip McGinley, both attempted to avoid the collision, but neither was able to get out of the way in time.  Mr. Bonds' van hit the driver's side of the Buick, killing Mr. McGinley, and seriously injuring his wife, Danielle McGinley.  Some of the children in the van were also injured.

[¶4]    Trooper Cody Smith arrived at the scene shortly after the collision.  He spoke with Mr. Bonds who told him about the family's travel plans and the circumstances of the collision.  Trooper Smith believed that Mr. Bonds' behavior seemed normal, but he noticed "the smell of marijuana on the crash scene coming from the van."  Later, law enforcement searched the van and found a glass jar of marijuana and several hand-rolled marijuana cigarettes.

[¶5]    The State charged Mr. Bonds with aggravated homicide by vehicle, aggravated assault and battery, and possession of marijuana.  The aggravated homicide charge relied on the theory that Mr. Bonds had operated a vehicle while under the influence of marijuana to a degree that rendered him incapable of driving safely, or, in the alternative, that he had "operated a vehicle in a reckless manner causing the death of another person."  The aggravated assault and battery charge alleged that he had recklessly caused serious bodily injury in a manner "manifesting extreme indifference to the value of human life."  Before trial, Mr. Bonds filed a motion in limine seeking to exclude evidence concerning

1

whether the passengers in the van had been wearing seatbelts, arguing that such evidence was irrelevant. The district court excluded the evidence, reasoning that it was not probative of whether Mr. Bonds had been driving recklessly. However, it forewarned that "[i]f evidence is elicited at trial concerning circumstances within the vehicle that might tend to show the probative value of the passengers not wearing seatbelts, beyond the fact that they were not wearing them, then the Court will re-visit the order."

[¶6] At trial, the State presented evidence that the collision was not the result of weather, road conditions, or mechanical issues with either of the vehicles. Rather, Trooper Jason Sawdon, a crash reconstructionist, concluded that the collision was a "human-caused crash." Trooper Sawdon analyzed data from both vehicles' airbag control modules, which sense and record information about the "pre-crash situation" in order to trigger airbag deployment. He testified that Mr. Bonds' van was travelling at 93 miles per hour four seconds before the crash. Mr. Bonds slowed the van to 65 miles per hour at the time of impact, but the data showed that "the braking performed by the [van] was weak." Based on the data, Trooper Sawdon determined that "Mr. Bonds had the chance to actually move back into [his] lane of travel and [] stay behind the semi," which would have avoided the collision. He attributed the collision to Mr. Bonds beginning to pass from "well behind" the semitruck, the speed of the van, "[u]nder-braking performance," and slow reaction time. He did not consider Mr. McGinley's driving to have contributed to the crash.

[¶7] During his case-in-chief, Mr. Bonds testified that the collision was a mere accident and not the result of recklessness or because he was under the influence of marijuana. He testified that the safety of the children in the van was his "[n]umber one" priority, stating: "That's the only thing I got. I don't have no other family but them six kids. . . . I would never put my kids at risk." While describing the scene of the accident, he testified:

> Well, after the accident I am now trapped in the vehicle, which is laying on its side with me and my eight kids. My two littlest babies, which are in car seats, are on the van side which is laying on the ground. . . . The back row, which has my three youngest kids in it, my two little boys and my youngest baby, they are now stuck – tilted on top of their sister. Now we're all – everybody is still fastened in the car, except my oldest because he's kind of big, the seatbelt don't always go around him. He weigh[s] 400. So he's really not in his seatbelt, but he's in the most securest seat we can get, which is right behind the driver. . . .
>
> So we are now stuck. Because my son was not in his seatbelt, he has now fell over his little sister, which is

seatbelted next to him. He weighs 400. She weighs 65 pounds. So my oldest little daughter has a broken arm from her brother falling over her in the accident.

[¶8] During cross-examination, the State requested a sidebar conference with the court. The State asked that it be allowed to cross-examine Mr. Bonds concerning seatbelt use, arguing that Mr. Bonds had opened the door to such questions. Mr. Bonds objected. The district court concluded that Mr. Bonds had "opened the door to allowing testimony concerning seatbelt use when he testified generally that the safety of the children [was] his top priority and he would do nothing to put them in harm's way" and allowed admission of testimony related to seatbelt use. Thus, the State questioned Mr. Bonds on seatbelt use in the van, saying, "So you're telling me, to your knowledge, everyone was seatbelted except [your oldest son]; is that right?" Mr. Bonds responded, "Yes, sir."

[¶9] Mr. Bonds rested his case, and the State recalled Trooper Sawdon as a rebuttal witness. He testified that the crash produced evidence concerning seatbelt use and revealed that four of the children had not been wearing seatbelts at the time of the collision.

[¶10] The jury found Mr. Bonds guilty of aggravated homicide by vehicle on a theory of reckless conduct,[1] aggravated assault and battery, and possession of marijuana. The district court sentenced Mr. Bonds to six to eight years imprisonment for aggravated homicide by vehicle and four to six years imprisonment for aggravated assault and battery, with the sentences to run consecutively. It also sentenced him to one year of imprisonment for possession of marijuana, running concurrent to the aggravated assault and battery sentence. Mr. Bonds timely appealed.

### STANDARD OF REVIEW

[¶11] If objected to at trial, we review challenges to the admission of evidence for an abuse of discretion. *Garland v. State*, 2017 WY 102, ¶¶ 11, 24, 401 P.3d 480, 483, 487 (Wyo. 2017). Under that standard, a "trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal. The appellant bears the burden of showing an abuse of discretion." *Id.* at ¶ 24, 401 P.3d at 487 (quoting *Cave v. Dep't of Family Servs. (In re GAC)*, 2017 WY 65, ¶ 32, 396 P.3d 411, 419 (Wyo. 2017)).

---

[1] The jury found Mr. Bonds not guilty of aggravated homicide by vehicle on the theory of driving under the influence.

3

*DISCUSSION*

[¶12]   Mr. Bonds argues the district court abused its discretion by admitting evidence of seatbelt use at trial, despite its in limine ruling.  He asserts the evidence was irrelevant, his testimony did not "open the door" to the evidence and, even if he opened the door, the evidence was still improper because it violated Wyoming Rule of Evidence 404(b).  The State counters the district court did not abuse its discretion because the "opened door" doctrine permits introduction of otherwise inadmissible evidence.  Alternatively, it argues any error in admitting the testimony was harmless.

[¶13]   The district court's in limine order excluding seatbelt evidence explicitly stated the court would "re-visit" the ruling if circumstances at trial changed.  In doing so, "the district court was just stating the obvious—that, in any trial, a party can renew a request for admission of evidence if the circumstances change."  *Garland*, 2017 WY 102, ¶ 22, 401 P.3d at 486.  One change in circumstance that may warrant admission of previously excluded evidence is when a party requests the district court to revisit its prior ruling because "the opposing party open[ed] the door to that evidence."  *Id.* (citing *Singer v. Lajaunie*, 2014 WY 159, ¶ 37, 339 P.3d 277, 287 (Wyo. 2014)).  "Opening the door" refers to the principle that "when one litigant offers evidence on an issue that is otherwise irrelevant or inadmissible, he cannot complain on appeal 'if the opposing party introduces evidence on the same subject.'"  *Singer*, 2014 WY 159, ¶ 37, 339 P.3d at 287 (quoting *Francis v. Clark Equip. Co.*, 993 F.2d 545, 550 (6th Cir. 1993)).  The open-door principle presupposes that the evidence at issue is "otherwise irrelevant or inadmissible."  *Singer*, 2014 WY 159, ¶ 37, 339 P.3d at 287; *see also* 29 Am. Jur. 2d *Evidence* § 352 (Feb. 2020 Update) ("'Opening the door' is an equitable principle that permits a party to respond to an act of another party by introducing otherwise inadmissible evidence."); 1 Mueller & Kirkpatrick, *Federal Evidence* § 1:12 (4th ed.) (May 2020 Update) ("Often the counterproof [to an open door] violates a doctrine relating to character evidence . . . or would be excluded as prejudicial or irrelevant but for the fact that it refutes the initial evidence.").  Thus, we need not decide whether evidence of seatbelt use was relevant or if it violated W.R.E. 404(b).  Instead, we consider whether Mr. Bonds' testimony opened the door to evidence of seatbelt use and, if so, whether the State's responsive evidence exceeded the limits of that open door.

[¶14] The district court's conclusion that Mr. Bonds opened the door to seatbelt evidence "when he testified generally that the safety of the children [was] his top priority" is questionable.  "The open door doctrine does not pave the way for responsive evidence just because it fits in the same general category as evidence already admitted."  1 Mueller & Kirkpatrick § 1:12, *supra*.  It is a stretch to conclude that general remarks about safety opened the door to testimony concerning which passengers were and were not wearing seatbelts.  However, we need not rely on Mr. Bonds' general testimony about his children's safety because he testified specifically about seatbelt use.  *See Garland*,

4

2017 WY 102, ¶ 24, 401 P.3d at 487 ("as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal"). Consistent with the district court's in limine ruling, the State did not elicit any testimony or introduce any evidence related to seatbelt use during its case-in-chief. Mr. Bonds then testified that his eldest son was the only passenger in the van not wearing a seatbelt. This testimony concerned precisely the type of evidence that the district court had excluded. Thus, Mr. Bonds "cannot complain" that the State "introduce[d] evidence on the same subject" in response. *Singer*, 2014 WY 159, ¶ 37, 339 P.3d at 287.

[¶15] The open-door doctrine is not without limits. We have recognized that a party responding to an open door cannot "engage in overkill which is only moderately justified," *Gayler v. State*, 957 P.2d 855, 859 (Wyo. 1998), nor can it exceed the scope of the open door. *Nelson v. State*, 2010 WY 159, ¶ 39, 245 P.3d 282, 292 (Wyo. 2010). "The admission of evidence to refute the earlier inadmissible evidence is not a matter of absolute right, but rests in the sound discretion of the court[.]" 31A C.J.S. *Evidence* § 353 (March 2020 Update). Before admitting otherwise inadmissible evidence in response to an open door, the trial court should weigh "the degree of 'fit' between initial proof and counterproof, the importance of the issue at stake, and the balance of probative worth and prejudicial effect," 1 Mueller & Kirkpatrick § 1:12, *supra*, including the potential for undue delay and confusion. 31A C.J.S. *Evidence* § 353.

[¶16] Here, the evidence offered in response to Mr. Bonds' testimony was brief and responded directly to his assertion that all but one passenger in the van were wearing seatbelts. Although the evidence's probative value was not great, neither was its potential for undue prejudice, delay, or confusion. Thus, we hold that the district court did not err in admitting the State's evidence concerning seatbelt use.

[¶17] Affirmed.