#29284-a-PJD
**2021 S.D. 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

COYE WAYNE NOHAVA,                        Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBIN J. HOUWMAN
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                               appellee.

CHRISTOPHER MILES of
Minnehaha County Public
   Defender's Office
Sioux Falls, South Dakota                 Attorneys for defendant and
                                               appellant.

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 16, 2020
OPINION FILED **06/02/21**

#29284

DEVANEY, Justice

[¶1.]  After a confidential informant purchased methamphetamine from Coye Nohava during a controlled drug buy, a grand jury indicted Nohava on one count of distributing a controlled substance and one count of possession of a controlled substance.  Nohava was convicted on both counts after a jury trial.  The evidence at trial centered on the testimony of the confidential informant.  Nohava appeals, asserting the circuit court abused its discretion by allowing the informant to testify about other act evidence after finding Nohava opened the door to such testimony.  Nohava also contends the circuit court erred in denying his motion for judgment of acquittal.

## Factual and Procedural Background

[¶2.]  On April 5, 2018, Angela Sarkkinen was arrested and charged with distribution and possession of methamphetamine.  After her arrest, she agreed to work with law enforcement as a confidential informant by engaging in controlled purchases of methamphetamine (controlled buys).  For her work as a confidential informant, Sarkkinen was paid $800 to cover vehicle and phone expenses and her court appearances as a testifying witness.  In addition, she received leniency in her pending drug charges.  Sarkkinen's distribution of a controlled substance charge was dismissed, and she received a suspended penitentiary sentence on her possession charge on the condition that she testify as needed when subpoenaed by the State as a cooperating witness.

[¶3.]  Dan Christiansen, a narcotics detective employed with the Minnehaha County Sheriff's Office and a member of the Sioux Falls Area Drug Task Force, was

the assigned case agent coordinating controlled buys of methamphetamine involving Sarkkinen as the purchaser. Sarkkinen had informed Detective Christiansen that she could buy methamphetamine from Coye Nohava, as he was someone she "knew from the drug world" and someone with whom she had been using methamphetamine before she agreed to become a confidential informant.

[¶4.]　　　　On April 10, 2018, a controlled buy was arranged at a Get-n-Go gas station in Sioux Falls. Prior to the buy, Officer Rachel Schmeichel searched Sarkkinen, gave her $900 in drug-buy money, and fitted her with an audio-recording device. Agent Matt Glenn, a Division of Criminal Investigation (DCI) agent working undercover, drove Sarkkinen to the Get-n-Go and parked on the south side of the parking lot. The purchase occurred by the gas pumps north of the location where Agent Glenn was parked. Sarkkinen would later testify at trial that when she got out of the vehicle and approached Nohava, he was at the gas pump in a truck with another individual, and she gave him $900 for an ounce of methamphetamine. According to Sarkkinen, the truck did not belong to Nohava, and she could not identify the other individual. Agent Glenn was unable to see the transaction from his vantage point. However, Officer Neilson Conley, a narcotics investigator with the Sioux Falls Police Department who was conducting surveillance in front of the Get-n-Go, saw Sarkkinen meet with Nohava and leave shortly thereafter. Officer Conley later identified Nohava at trial and testified that he could not recall seeing another individual in the truck.

[¶5.]　　　　Upon her return to Agent Glenn's car, Sarkkinen relinquished a clear plastic baggie containing a crystal-like substance. Agent Glenn then drove

Sarkkinen to the pre-arranged, post-buy location where she was searched again to confirm she no longer had the $900 or any other drugs on her person. The baggie was subsequently taken to the Sioux Falls Police Department laboratory where the substance tested positive for methamphetamine.

[¶6.] Nohava was not charged until March 28, 2019, when a grand jury indicted him on one count of distributing a controlled substance and one count of possession of a controlled substance.[1] Prior to trial, Nohava filed several motions in limine. These included a motion to order the State to refrain from making any direct or indirect references to Nohava's prior criminal record or any other prior wrongs or acts to prove his character or to show that he acted in conformity with those acts.

[¶7.] On November 19, 2019, a two-day jury trial began. Before jury selection, the court granted Nohava's motion in limine to exclude other act evidence. The State did not object, and consequently, there was no record made at that time of any specific other acts known to the parties. During the State's direct examination of Sarkkinen, she testified that she had known Nohava since approximately February of 2018 and had associated with him until about May of 2018. After the State's direct examination, the following exchange occurred during cross-examination:

> Defense Counsel: But back in early 2018 you were actually in a relationship with Coye Nohava?

---

1. Detective Christiansen explained that Nohava was not arrested immediately after the transaction at issue because Sarkkinen continued to work as a confidential informant. It is unknown from the record whether she made any other controlled buys involving Nohava.

Sarkkinen: No.

Defense Counsel: You had had sex with Coye Nohava?

Sarkkinen: No.

Defense Counsel: [A]t some point during that time that you knew him . . . from February to May 2018[,] you and Coye actually got in a fight over a motorcycle?

Sarkkinen: Yes.

Defense Counsel: And that ended the relationship on bad terms?

Sarkkinen: Yes.

On redirect, the State further inquired into the "fight over a motorcycle":

State: I believe the defense referenced an instance where there was an argument over a motorcycle; is that correct?

Sarkkinen: Yes.

State: Was that before or after the April 10 date?

Sarkkinen: After.

State: And can you describe what happened on that date[?]

Sarkkinen: We were up in Sioux City, Iowa, at Hard Rock Casino where [Nohava] traded his motorcycle for --

[¶8.] At this point, Nohava raised a Rule 404(b) objection. In response, the State asserted that the defense had opened the door to such testimony. The circuit court overruled Nohava's objection, and Sarkkinen continued describing the incident. She testified that Nohava was trading his motorcycle for "meth" but the deal fell through because "the person never showed up with meth," and Nohava was very upset. Sarkkinen further related that on their way back to Sioux Falls, she was in the front seat with a friend of Nohava's who was driving, and Nohava was in

the back seat. Sarkkinen explained that she tried to "calm him down" by suggesting that they could figure out how to get his bike back. But at some point during the conversation, after she told Nohava to "shut up," Nohava asked the driver to pull over. He then got out of the vehicle, "dragged [Sarkkinen] out of the car, grabbed [her] by the throat and slammed [her] up against the car." Sarkkinen testified that after she reported this incident to Detective Christiansen, he did not arrange any more controlled buys involving Nohava because she "would have been in danger."

[¶9.] The defense strategy at trial was twofold. It focused on challenging Sarkkinen's credibility and criticizing law enforcement's investigation. As to the latter, the defense cross-examined the law enforcement witnesses on their failure to identify Nohava as the dealer during the transaction through photographs or video surveillance and their failure to ask the gas station for any security camera footage that might have captured the controlled buy.[2] After the State rested, Nohava made a motion for judgment of acquittal, which the circuit court denied. The defense did not call any witnesses.

[¶10.] In closing argument, the State addressed Nohava's critique of the investigation in this case. In particular, the State explained the reason why law enforcement does not photograph or video controlled buys, and in that context, the State mentioned the assault at issue:

---

2. The audio recording of the controlled buy was admitted at trial, but it is very hard to decipher anything of significance contained therein. Detective Christiansen testified that law enforcement typically does not video or take photographs during controlled buys to protect the identity of confidential informants and undercover officers.

> [When] you are working undercover, if you are running around taking photographs and videotaping a controlled purchase, it outs you . . . . The defendant or anyone else with him is likely to see you. That puts the officers at risk. That puts the uncover [sic] people at risk. And also, as Detective Christiansen explained in great detail, it puts the confidential informant at risk . . . . You don't want to release the information of your confidential informant because of the danger that that puts them in. With social media, it's very simple for a defendant to get that information, throw it up on the internet, and it's out there for the world to see, not just for that one particular person they're buying from, but from everyone else that they might be able to buy from as well.
>
> And how do we know that the narcotics world is so dangerous? Well, you heard from Angela Sarkkinen today. And you heard her explain that after April 10th of 2018, she was still having contact with Coye Nohava. And in fact, he had attempted to engage in a methamphetamine deal over a motorcycle. It didn't go well, and it resulted in having an argument with Ms. Sarkkinen. And the end result of that argument was Mr. Nohava pulling her out of the vehicle, pressing her up against the vehicle, and attacking her, choking her. You saw her get emotional on the stand today while she spoke about that. The drug world is dangerous. It's dangerous to everyone involved and especially dangerous for confidential informants.

Nohava did not object to these comments. Instead, he also referred to the other act at issue during closing argument, albeit in a more general manner. In addition to pointing out how Sarkkinen benefitted by cooperating with law enforcement monetarily and in receiving a more favorable outcome in her pending criminal case, defense counsel pointed to her bias and motive to get back at Nohava:

> Angela Sarkkinen had an axe to grind against Coye Nohava. She may not have classified whatever they had as a relationship, but we know it was a relationship because they knew each other from February [to] May 2018. They were traveling together. And that relationship ended, in her very own words, on a bad note . . . . But her motivations don't stop there. She was motivated by staying with her kids, her fiancé, and at her job. So why not kill two birds with one stone? Get back at a man that you had a fight with and keep yourself out of trouble.

-6-

[¶11.] After the jury retired for deliberations, the circuit court made a record regarding its prior ruling on Nohava's Rule 404(b) objection. The circuit court first noted that there was no bench conference prior to the court's ruling. The court then explained the two-step balancing it had conducted prior to overruling the objection and allowing Sarkkinen to provide further details about the incident in question.

[¶12.] The jury found Nohava guilty on both counts. Nohava was sentenced on February 10, 2020, to ten years in the South Dakota State Penitentiary on the distribution count, with credit for forty-four days previously served, and a concurrent five-year sentence on the possession count, with all five years suspended. On March 12, 2020, Nohava filed his notice of appeal with this Court, raising the following issues:

> 1. Whether the circuit court abused its discretion by allowing the State to elicit other act evidence.
>
> 2. Whether the circuit court erred in denying Nohava's motion for judgment of acquittal.

**Standard of Review**

[¶13.] We review a circuit court's decision to admit or deny other act evidence under SDCL 19-19-404(b) (Rule 404(b)) for an abuse of discretion. *State v. Phillips*, 2018 S.D. 2, ¶ 13, 906 N.W.2d 411, 415 (citing *State v. Medicine Eagle*, 2013 S.D. 60, ¶ 16, 835 N.W.2d 886, 892). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *State v. Holler*, 2020 S.D. 28, ¶ 10, 944 N.W.2d 339, 342 (quoting *State v. Delehoy*, 2019 S.D. 30, ¶ 22, 929 N.W.2d 103, 109). "We review the denial of a motion for [judgment of] acquittal de novo."

*State v. Traversie*, 2016 S.D. 19, ¶ 9, 877 N.W.2d 327, 330 (citing *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83).

Analysis and Decision

**1. *Whether the circuit court abused its discretion by allowing the State to elicit other act evidence.***

[¶14.] Nohava argues that the testimony the State elicited from Sarkkinen during her redirect examination is precisely the type of propensity evidence that is precluded by Rule 404(b). Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that [the person] acted in conformity therewith." *State v. Birdshead*, 2015 S.D. 77, ¶ 57, 871 N.W.2d 62, 81 (quoting SDCL 19-19-404(b)). However, it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." SDCL 19-19-404(b)(2). We have held that in order to determine the admissibility of other act evidence, the circuit court must "conduct a two-part balancing test on the record[.]" *Birdshead*, 2015 S.D. 77, ¶ 57, 871 N.W.2d at 81. The court must determine first, whether the "evidence is relevant to some material issue in the case other than character[,]" and second, "whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice[.]" *Id.*

[¶15.] With respect to the first inquiry, Nohava argues that the circuit court erroneously determined that the details of the fight between Sarkkinen and Nohava were relevant to a material issue in his case because the fight occurred after the controlled buy, and hence, "[t]he details of the subsequent motorcycle dispute cannot be construed as consequential in determining the action." However, in

overruling Nohava's objection, the circuit court found Nohava had opened the door to a further explanation of the "fight over a motorcycle." It was clear from the record that Nohava solicited testimony about this fight to impeach Sarkkinen's credibility by suggesting she had an adverse motive or bias against him. The circuit court recognized as much when it determined that the State was entitled "to obtain and elicit more information about that situation and about when that situation occurred" in an attempt to rehabilitate its witness.

[¶16.] Our prior decisions support the circuit court's determination that Nohava opened the door to what might have otherwise been inadmissible Rule 404(b) evidence when he decided to ask Sarkkinen about a fight she had with him that was not directly connected to the controlled drug buy at issue. *See, e.g.*, *State v. Taylor*, 2020 S.D. 48, ¶ 34 n.4, 948 N.W.2d 342, 352 n.4 (explaining that this Court "ha[s] permitted the State to introduce otherwise inadmissible evidence when a criminal defendant's trial strategy has 'opened the door' to the evidence" (quoting *State v. Letcher*, 1996 S.D. 88, ¶ 25, 552 N.W.2d 402, 406)); *State v. Moriarty*, 534 N.W.2d 841, 843 (S.D. 1995) (explaining that a party who takes "a calculated risk" by introducing "objectionable evidence" cannot "count on the admission as error"); *State v. New*, 536 N.W.2d 714, 718 (S.D. 1995) (holding that by strategically placing a "witness'[s] credibility into question through cross-examination which presented inconsistencies in [the witness's] testimony . . . the defendant 'opened the door'" for the State to introduce previously excluded testimony).

[¶17.] Here, Nohava employed a strategy to suggest Sarkkinen lacked credibility by showing she had a bias and motive to testify falsely against him.

Defense counsel first asked Sarkkinen if she had a sexual relationship with Nohava (which she denied) and then asked her about the fight at issue to show the relationship had ended on bad terms. The State was entitled to rehabilitate its key witness by eliciting information about the circumstances surrounding this fight. The circuit court did not abuse its discretion in determining that Nohava had opened the door to further testimony on this issue because the nature of the relationship between Nohava and Sarkkinen was relevant to Sarkkinen's credibility.

[¶18.] Nohava concedes the State's follow-up question on the timing of the fight was relevant, but he argues that once Sarkkinen testified that the fight occurred *after* the controlled buy, the State had sufficiently countered any notion that the buy was orchestrated as a set-up by Sarkkinen to get back at Nohava. Nohava argues that by inquiring about the details of a fight that occurred after the controlled buy, the State exceeded *the scope* of the open-door doctrine. While our prior cases have addressed whether the introduction of certain testimony or evidence opened the door to otherwise inadmissible testimony, we have not addressed the precise issue Nohava raises here—whether the responding party presented evidence *exceeding the boundaries* of what the open-door doctrine allows. Other courts have, however, addressed this question.

[¶19.] The Seventh Circuit has recognized that "[t]he gist of the [open-door] doctrine is proportionality and fairness. When the opponent's response 'does not directly contradict the evidence previously received' or 'goes beyond the necessity of removing prejudice in the interest of fairness,' it should not be admitted." *United*

*States v. Jett*, 908 F.3d 252, 271 (7th Cir. 2018) (quoting *United States v. Amaya*, 828 F.3d 518, 527 (7th Cir. 2016)). Similarly, the Wyoming Supreme Court has held that "[t]he open-door doctrine is not without limits" and that "a party responding to an open door cannot 'engage in overkill which is only moderately justified' . . . nor can it exceed the scope of the open door." *Bonds v. Wyoming*, 463 P.3d 162, 166 (Wyo. 2020). When considering the parameters of admissible responsive testimony, the Wyoming court cautioned trial courts to weigh "the degree of 'fit' between initial proof and counterproof, the importance of the issue at stake, and the balance of probative worth and prejudicial effect[.]" *Id.* (internal citation omitted); *see also Khan v. Maryland*, 74 A.3d 844, 856 (Md. Ct. Spec. App. 2013) (holding that once "the proverbial door was opened to the disputed testimony, it remained for the trial court to balance its probative value against its prejudicial nature"). We likewise conclude that the evidence that comes through the open door must be proportional to the initial inquiry which provoked the need for a response or clarification.

[¶20.] Nohava relies heavily on *Bentley v. Alaska*, a case with a scenario analogous to the one here, where a defendant cross-examined the State's key witness, the defendant's former girlfriend, about the circumstances of their breakup in an attempt to show her bias against him. 711 P.2d 544, 545 (Alaska Ct. App. 1985). The trial court allowed the prosecutor, on redirect, to solicit additional circumstances surrounding the breakup because Bentley had opened the door to such evidence. The Alaska Court of Appeals reversed, opining that "[o]pening the door is one thing. But what comes through the door is another . . . . Introduction of otherwise inadmissible evidence under shield of this doctrine is permitted 'only to

the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.'" *Id.* at 546 (quoting *United States v. Winston*, 447 F.2d 1236, 1240 (D.C. Cir. 1971)).

[¶21.]       Applying these limiting principles, Nohava argues that the State did not just rehabilitate Sarkkinen, but "unfairly elaborated upon" the details of their dispute.  As a starting premise, we reject Nohava's assertion that the State should have been limited in its follow-up questioning to asking Sarkkinen about *when* the fight occurred.  This assertion ignores the possibility that if Sarkkinen had a bias or motive adverse to Nohava stemming from this fight, this could impact not only her actions with respect to the buy, but also her later testimony about what had transpired.  In addition, had the circuit court not allowed the State to inquire further into what happened on that date, the jury would have been left to speculate as to whether or how this fight could be impacting Sarkkinen's trial testimony.  There was nothing inappropriate, therefore, about the State asking further questions about what defense counsel cryptically described as a "fight over a motorcycle."  *See State v. Buchholtz*, 2013 S.D. 96, ¶ 14, 841 N.W.2d 449, 454-55 (explaining that the court has discretion to allow the State to put the defendant's evidence in context to "prevent a potentially misleading inference [from] lodg[ing] in the minds of the jurors").

[¶22.]       Granted, the nature of the testimony that ultimately followed might not have been admitted under Rule 404(b) if offered in the State's case-in-chief.  However, Nohava clearly opened the door to the evidence here by his calculated strategy to use this further incident as a means to impugn Sarkkinen's credibility.

Moreover, the admission of the later planned drug transaction did not have much impact on the overall trial record. Sarkkinen had already testified that while working as an informant, she identified Nohava as someone from whom she could buy methamphetamine. Therefore, unlike in *Bentley*, the State did not engage in "overkill" when it attempted to alleviate the implication that some other type of event had occurred between Sarkkinen and Nohava that had nothing to do with using drugs.

[¶23.] However, the further testimony that "came through the door" about Nohava assaulting Sarkkinen is the type of evidence which, in many cases, would give rise to potential concerns of disproportionality when balancing the probative value against the danger of unfair prejudice. While Nohava argues that the circuit court erred by not conducting such a balancing prior to admitting the evidence, he did not alert the circuit court to the fact that Sarkkinen's description of the "fight over a motorcycle" would likely include testimony about an underlying drug deal and an ensuing assault.[3] Here, nothing in the record indicates that the court knew about those details because the parties had stipulated to a generic order prohibiting other act evidence. Moreover, the potential for an unfairly prejudicial response was not apparent from the context surrounding the question the State posed to Sarkkinen, and the circuit court did not have the benefit of the now-adopted proportionality analysis for instances where a party opens the door to the admission

---

3. Nohava has not alleged that he was unaware of the details to which Sarkkinen ultimately testified.

of otherwise inadmissible evidence.[4] Under these circumstances, we conclude the circuit court did not abuse its discretion by overruling Nohava's general 404(b) objection after defense counsel's question opened the door to further inquiry.

[¶24.] In any event, a conclusion that the circuit court abused its discretion, would not end our inquiry. We review a circuit court's evidentiary rulings by utilizing a two-step process. *State v. Kvasnicka*, 2013 S.D. 25, ¶ 19, 829 N.W.2d 123, 128. First, we "determine whether the trial court abused its discretion in making an evidentiary ruling; and second, [we determine] whether this error was a prejudicial error that 'in all probability' affected the jury's conclusion." *Id.* (quoting *Supreme Pork v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 59, 764 N.W.2d 474, 491).

[¶25.] In asserting prejudice, Nohava points to the fact that during the State's closing argument, the State improperly used Sarkkinen's testimony about the later drug transaction and assault to paint him as a dangerous drug dealer. He further alleges that by referring to the assault as illustrative of the potential

---

4. After the jury commenced its deliberations, the circuit court made a record indicating that in overruling Nohava's Rule 404(b) objection, it had applied our settled two-part balancing test for the admission of such evidence and had weighed its probative value against the danger of unfair prejudice. However, because the record indicates the court did not know the details of Sarkkinen's testimony at the time the court ruled on Nohava's objection, this is not a scenario which fits within the confines of our holding in *State v. Birdshead*. In *Birdshead*, there had been a pretrial hearing at which the court was made aware of the proffered other acts; therefore, we presumed that the court weighed the evidence before ruling on the Rule 403 objection later made at trial. 2015 S.D. 77, ¶ 59, 871 N.W.2d at 81. Here, in contrast, no such proffer was made at a pretrial hearing and neither defense counsel nor the State asked to approach the bench to apprise the court of the anticipated testimony prior to its ruling on the objection. Thus, we do not consider the court's after-the-fact balancing in our assessment of whether the court abused its discretion.

dangers and violence of the drug world, the State made a prohibited community conscience argument. Contrary to Nohava's characterization of the State's closing argument, however, the record reflects that the State's reference to Nohava assaulting Sarkkinen was not an appeal to community conscience. Rather, it was made in the specific context of responding to Nohava's critique of law enforcement's failure to document the controlled buy with photographs or video recordings. The State referred to the assault when explaining the importance of maintaining the confidentiality of undercover officers and informants to ensure their safety.

[¶26.] Notably, Nohava did not object to the State's closing argument. Instead, he referred to the fight, at least indirectly, in his own closing argument by emphasizing that Sarkkinen "had an axe to grind" against him and that her relationship with him "ended, in her very own words, on a bad note." Although the testimony regarding the nature of the assault might have been inflammatory, it nevertheless strengthened Nohava's argument that Sarkkinen had a reason to testify falsely against him. Therefore, Nohava has failed to show that Sarkkinen's additional testimony was so prejudicial that in all probability it affected the outcome of his trial.

### 2. Whether the circuit court erred in denying Nohava's motion for judgment of acquittal.

[¶27.] When reviewing a denial of a motion for judgment of acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Ware*, 2020 S.D. 20, ¶ 12, 942 N.W.2d 269, 272 (quoting *State v. Martin*, 2015 S.D. 2, ¶ 13, 859 N.W.2d 600, 606).

We do "not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence on appeal." *Id.* (quoting *State v. Carter*, 2008 S.D. 65, ¶ 44, 771 N.W.2d 329, 342).

[¶28.] Nohava argues that there was insufficient evidence to prove his guilt beyond a reasonable doubt because Sarkkinen was not a credible witness and Officer Conley "did not describe how he knew the individual [who sold Sarkkinen methamphetamine] was Nohava." However, "[i]t is settled law that the credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit positive identification to be made." *State v. Mullins*, 260 N.W.2d 628, 630 (S.D. 1977). Here, Nohava was identified as the seller by Sarkkinen, the first-hand participant in the controlled buy, and also by Officer Conley, a law enforcement witness who "viewed the accused under circumstances as would permit a positive identification to be made." While Nohava points to the fact that another individual besides him was in the truck when the drug exchange occurred, Officer Conley testified that he personally observed Sarkkinen interact with Nohava during the transaction. Finally, Nohava did not present any evidence negating his presence during this transaction, and given the controlled circumstances of the buy, there is no question that money was in fact exchanged for controlled substances. Because the evidence here supports a reasonable finding of Nohava's guilt on both counts, the circuit court did not err in denying Nohava's motion for judgment of acquittal.

[¶29.] Affirmed.

[¶30.]     KERN and SALTER, Justices, and GILBERTSON, Retired

Chief Justice, concur.

[¶31.]     JENSEN, Chief Justice, concurs specially.

[¶32.]     MYREN, Justice, not having been a member of the Court at the

time this action was submitted to the Court, did not participate.


JENSEN, Chief Justice (concurring specially).

[¶33.]     I join issue 2 of the conference opinion and specially concur on issue 1.

[¶34.]     Admittedly, the State and defense provided little assistance to the

circuit court as it considered Nohava's 404(b) objection and the State's claim that

Nohava had opened the door to the evidence. Despite stipulating to a pretrial order

that precluded the State from presenting other act evidence at trial, the State made

no effort to alert the court that it believed the door had been opened to the evidence

that Sarkkinen had been violently assaulted at Nohava's hands. Nohava also failed

to inform the court of the specific prejudicial nature of this evidence.

[¶35.]     Nonetheless, Nohava's 404(b) objection alerted the court that the State

intended to present other act evidence that was not relevant to the issues in the

case and/or was unfairly prejudicial to him. The unanticipated evidence that

followed demonstrates the importance of a court taking a moment to inquire about

the nature of the evidence *before* ruling on an objection to determine whether the

evidence was admissible under 404(b) or if the door had been opened as wide as the

State believed.

[¶36.] Importantly, in determining that Nohava had opened the door to the evidence, the circuit court did not have the benefit of the rule we have fashioned in this case that properly places some limits on the open-door doctrine. *See United States v. Jett*, 908 F.3d 252, 271 (7th Cir. 2018) (quoting *United States v. Amaya*, 828 F.3d 518, 527 (7th Cir. 2016)) ("The gist of the [open-door] doctrine is proportionality and fairness. When the opponent's response 'does not directly contradict the evidence previously received' or 'goes beyond the necessity of removing prejudice in the interest of fairness,' it should not be admitted."). The evidence of Nohava's assault of Sarkkinen may have violated this rule, but given the state of our open-door doctrine at the time of trial, there was no abuse of discretion. *See State v. Birdshead*, 2015 S.D. 77, ¶ 51, 871 N.W.2d 62, 79 ("[W]hen a trial court misapplies a rule of evidence, as opposed to merely allowing or refusing questionable evidence, it abuses its discretion.").