#25569-a-JKK

**2011 S.D. 27**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

IVAN GOOD PLUME,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN J. DELANEY
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General                    Attorneys for plaintiff
Pierre, South Dakota                    and appellee.

KEVIN S. LEWIS                    Attorney for defendant
Rapid City, South Dakota                    and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2011

OPINION FILED **06/22/11**

KONENKAMP, Justice

[¶1.]		Defendant, a Native American, argues that he was denied due process in sentencing when the judge voiced a racial stereotype to describe his violent behavior under the influence of alcohol.  The judge used the term "go native."  In defendant's view, the remark was "improper" and "gave the impression of bias and prejudice" entitling him to resentencing before another judge.  Although the term was ill chosen, upon examining the judge's entire remarks, we detect no risk of actual bias based on objective and reasonable perceptions, and thus, we affirm.

## Background

[¶2.]		Defendant Ivan Good Plume and Mary Flat Lip started dating in November 2008.  Once they moved in together, Flat Lip saw a change in Good Plume's behavior.  He was often drunk, violent, and verbally abusive.  One evening, he struck her with such force that he broke her nose.  In early 2009, Flat Lip ended their relationship.  But Good Plume would not accept her decision.  He called her constantly.  His attempts to maintain contact with her increased in May 2009, when she started a relationship with Michael Gregg.  After she moved in with Gregg at his apartment in the Budget Inn Motel, Flat Lip received a letter from Good Plume calling her degrading names and threatening to hurt her and Gregg.

[¶3.]		On May 21, 2009, while Gregg was at work, Flat Lip went to a party at the Surfwood Apartments.  There, she ran into Good Plume, who was "smothering . . . and continually grabbing and trying to have [her] kiss him and hold him."  Flat Lip left the party and returned to Gregg's apartment.  When Gregg returned from work, they ate together and watched television.  Good Plume telephoned and

demanded to talk to Flat Lip. He threatened to beat up Gregg. Sometime after the call ended, Gregg and Flat Lip went to bed. They awoke to knocking at the door, knocking that turned into loud pounding. Suddenly, the door flew open — Good Plume was standing there with a shovel held in the air. Gregg ran to the door to force Good Plume out. Flat Lip called 911. Good Plume struck Gregg hard enough with the shovel to leave a lump on his head and a mark on his shoulder.

[¶4.]     In response to the 911 call, Rapid City Police Officer James Hansen arrived at the scene. He noticed the broken door and found a shovel on the premises. Good Plume was gone, but was arrested later that day. He was indicted on one count of first-degree burglary in violation of SDCL 22-32-1(3), and two alternative counts of aggravated assault in violation of SDCL 22-18-1.1(1) or (2). The State later filed an amended part two habitual offender information. At the end of the jury trial, the judge granted Good Plume's motion for a judgment of acquittal on the first-degree burglary charge. The jury returned a verdict of guilty on count two of aggravated assault. Good Plume was later found guilty in a court trial of the part two information. He was sentenced to eighteen years in prison. In this appeal, he asserts that the sentencing judge, "in referring to a pattern of drunken violence by Good Plume as going native," acted improperly and violated his federal and state due process rights. He also claims that the judge abused his discretion in admitting into evidence Good Plume's letter to Flat Lip.*

---

*     Standard of Review: We ordinarily review a defendant's sentence for an abuse of discretion. *State v. Overbey*, 2010 S.D. 78, ¶ 13, 790 N.W.2d 35, 40 (citation omitted). But because Good Plume claims his constitutional right to a fair sentencing was denied by the judge's bias, we review his constitutional

(continued . . .)

**Analysis and Decision**

[¶5.] Good Plume seeks resentencing before another judge. He argues that the judge violated his right to due process at sentencing when he engaged in racial stereotyping. Good Plume avers that by making the statement "go native" in describing Good Plume's behavior, the judge not only evinced his personal bias against him but also used race as a sentencing factor, a constitutionally impermissible consideration. The State, on the other hand, contends that a review of the entire transcript reveals no "personal enmity or prejudice by the judge against Good Plume."

[¶6.] A defendant has a due process right to a fair and impartial judge. *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 942 (1955). We presume our trial judges act impartially unless a specific and substantial showing can be made to the contrary. *State v. Page*, 2006 S.D. 2, ¶ 16, 709 N.W.2d 739, 750 (citation omitted). A judge's expression of opinion based on observation of the witnesses and evidence in the courtroom does not prove bias. *State v. Hoadley,* 2002 S.D. 109, ¶ 33, 651 N.W.2d 249, 257 (citation omitted). Prejudice is an

> attitude of personal enmity towards the party or in favor of the adverse party to the other party's detriment. It is not the mere possession of views regarding the law or the conduct of a party. Prejudice is in the personal sense rather than in the judicial sense and refers to a mental attitude or a disposition of the judge towards a party. In order for the alleged bias and prejudice to be disqualifying, it must stem from an extrajudicial source and result in an opinion on the merits on some basis

_____

(. . . continued)
claim de novo. *See State v. Tiegen*, 2008 S.D. 6, ¶ 14, 744 N.W.2d 578, 585 (citations omitted). Evidentiary rulings are reviewed for an abuse of discretion. *Von Sternberg v. Caffee,* 2005 S.D. 14, ¶ 13, 692 N.W.2d 549, 554.

other than what the judge learned from participation in the case[.]

*Id.* ¶ 33 (quoting *In re C.N.H.,* 998 S.W.2d 553, 560 (Mo. Ct. App. 1999)).

[¶7.]        Obviously, racial bias would constitute a personal prejudice, and racial prejudice can hold no sway in our courts.  *See Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 1728, 90 L. Ed. 2d 69 (1986) (Marshall, J., concurring); *Turner v. Murray*, 476 U.S. 28, 35-38, 106 S. Ct. 1683, 1687-89, 90 L. Ed. 2d 27 (1986).  Numerous courts have held that race and national origin are constitutionally impermissible factors to consider in sentencing.  *See, e.g.*, *United States v. Onwuemene,* 933 F.2d 650, 651 (8th Cir. 1991); *United States v. Edwardo-Franco,* 885 F.2d 1002, 1005 (2d Cir. 1989).  Indeed, relying on a racial stereotype bears no reasonable nexus to proper sentencing considerations.  *See State v. Harris*, 786 N.W.2d 409, 427 (Wis. 2010).

[¶8.]        Was the sentencing judge's "go native" remark evidence of racial prejudice?  To answer this question, we must first examine the remark in context.  Before pronouncing sentence, Judge Delaney said:

> My problem is really simple, Mr. Good Plume.  The answer to it is, perhaps you might be the greatest human being on the face of the earth if you didn't drink.  But I've got about 35 or 40 criminal entries in a five year span.  And I would assume every single one of them has to do with drinking.  A good share of them have to do with violence.  A fair number of them have to do with women.
>
> And you drink and your ability to control behavior is gone.  I mean, it's not even mildly gone.  It's completely absolute flipping berserk.  You dodged a potential life sentence on a slam dunk burglary charge because it was charged under the wrong subsection.  The other one was an absolute, ice cold no brainer.  And so you got a break on that.

> And my concern with you, Mr. Good Plume, is no matter how good a guy you are sober, there is absolutely no way known to God to keep you from drinking. And once you go drinking, you go sideways. That's the problem.
>
> I know of no cure except absolute, complete, 100 percent freedom from drinking and drugs of any sort, type, or nature. And as your crimes are violent, you put me in a position to where if I say, well, I think you can do that, and you go out and don't do it, then I hold myself personally responsible for the harm and injury you cause.
>
> And I don't doubt you are extremely bright. I don't doubt you have a great many good qualities. And unfortunately, when you drink—and this was not my term. It was used by a young Native American in extremely violent circumstances—and he said ***go native***. Now I am not sure what it means but it smacked of huge violence.
>
> And that's absolutely descriptive of the event that went down that night. Absolutely descriptive of the events that brought you here. And I attribute it to nothing more than your inability to control raging anger when you are under the influence of alcohol. I don't see any response to that.

(Emphasis added.)

[¶9.]     Although use of the phrase "go native" was undoubtedly ill chosen, in context, the judge's comments do not explicitly articulate racial bias or prejudice directed toward Good Plume. The judge never referred directly to Good Plume's race. Nonetheless, the "go native" remark might be taken as giving the appearance of racial stereotyping. By what standard, then, do we determine when the due process clause requires judicial disqualification based on bias?

[¶10.]     The United States Supreme Court recently explained that "[t]he difficulties of inquiring into actual bias . . . simply underscore the need for objective rules." *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2263, 173 L. Ed. 2d 1208 (2009) (not published in the United States reporter). Thus, an "objective

standard" must be applied "that do[es] not require proof of actual bias." *Id.* A litigant may be denied due process when there is a "serious risk of actual bias — based on objective and reasonable perceptions[.]" *Id.* Accordingly, while the due process clause does not require proof of actual bias for judicial disqualification, the mere appearance of bias is not sufficient. Rather, in the objective assessment of the circumstances in a particular case, there must exist "'the probability of actual bias on the part of the judge or decisionmaker [that] is too high to be constitutionally tolerable.'" *Id.* at 2257 (citation omitted). And only the most "extreme facts" would justify judicial disqualification based on the due process clause. *Id.* at 2265-66. Where only an appearance of bias is present, recourse must be sought in state rules for disqualification: "Because the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution." *Id.* at 2267.

[¶11.]     Here, Good Plume has not presented "'the probability of actual bias on the part of the judge . . . [that] is too high to be constitutionally tolerable.'" *See id.* at 2257 (citation omitted). On the contrary, we see no "serious risk of actual bias — based on objective and reasonable perceptions." *See id.* at 2263. The judge considered Good Plume's criminal history, his uncontrollable and habitual drinking, his inclination to commit crime, and his potential for future violent offenses. While the judge used the expression "go native," there is scant indication that the statement reflected a reliance on Good Plume's status as a Native American. In fact, the judge emphasized that he attributed the incident "to nothing more than [Good Plume's] inability to control [his] raging anger when [he] is under the

influence of alcohol." From a review of the entire sentencing transcript, we conclude that the sentence was based on facts introduced and events occurring in the course of the current proceedings or prior proceedings and not on racial stereotype or prejudice. *See Page*, 2006 S.D. 2, ¶ 16, 709 N.W.2d at 750-51. Good Plume has not met his burden of making a specific and substantial showing that racial or personal bias was used as an aggravating factor in his sentence.

[¶12.] Good Plume next argues that it was an abuse of discretion to admit into evidence the threatening letter he sent to Flat Lip. To Good Plume, the letter constitutes Rule 404(b) evidence, which is "[e]vidence of other crimes, wrongs, or acts." *See* SDCL 19-12-5 (Rule 404(b)). Good Plume does not dispute that he authored the letter, or that it was received by Flat Lip shortly before the assault on Gregg. Rather, he maintains that because the letter contains evidence of other acts and wrongs and is highly prejudicial, the judge was required to engage in the two-part probative versus prejudice analysis before admitting Rule 404(b) evidence. *See State v. Huber*, 2010 S.D. 63, ¶ 56, 789 N.W.2d 283, 301.

[¶13.] The letter was admitted, not as proof of other wrongs, crimes, or acts, but as res gestae evidence. "Res gestae evidence has been defined as 'the events at issue or others contemporaneous with them.'" *State v. Fisher*, 2010 S.D. 44, ¶ 19, 783 N.W.2d 664, 671 (quoting Bryan A. Garner, Dictionary of Modern Legal Usage (2d ed. 1995)). Res gestae is "the well-recognized exception to Rule 404(b)." *State v. Goodroad*, 1997 S.D. 46, ¶ 10, 563 N.W.2d 126, 130 (citation omitted). We recently explained res gestae evidence to be a "'matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith

as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood.'" *Fisher*, 2010 S.D. 44, ¶ 19, 783 N.W.2d at 671 (quoting *Martinez v. People*, 132 P. 64, 65 (Colo. 1913)).

[¶14.]    The letter was not admitted to prove that Good Plume engaged in other wrongs, crimes, or acts. As the judge found, the letter was necessary to prove Good Plume's intent to harm Gregg. Moreover, the jury was given a limiting instruction. From our review of the letter and its use at trial, the judge was not obliged to consider the requirements of Rule 404(b) before admitting it. The letter details matters incidental to the case and gives context to the essential facts. It was so closely connected to the assault that "without knowledge of [it] the main fact might not be properly understood." *See id.* We see no abuse of discretion in admitting the letter.

[¶15.]    Affirmed.

[¶16.]    GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and MEIERHENRY, Retired Justice, concur.