#29664-a-SPM
**2022 S.D. 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                                    Plaintiff and Appellee,

v.

DESTINY OTOBHIALE,                                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BON HOMME COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHERYLE W. GERING
Judge

* * * *

KENNETH D. BERTSCH
Menno, South Dakota                          Attorney for defendant and
                                             appellant.


JASON R. RAVNSBORG
Attorney General

NOLAN WELKER
Assistant Attorney General
Pierre, South Dakota                         Attorneys for plaintiff and
                                             appellee.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 14, 2022
OPINION FILED **06/15/22**

#29664

MYREN, Justice

[¶1.] A jury convicted Destiny Otobhiale of aiding, abetting, or advising grand theft by deception. He appeals the circuit court's evidentiary rulings admitting other acts as Rule 404(b) evidence or, in the alternative, as *res gestae* evidence. Otobhiale also appeals the circuit court's denial of his motions for a new trial based on newly discovered evidence and for judgment of acquittal. We affirm.

## Facts and Procedural History

[¶2.] On February 4, 2020, a grand jury indicted Otobhiale on two counts of aiding, abetting, or advising grand theft by deception. Both counts alleged Otobhiale aided, abetted, or advised another person in planning or committing a grand theft by deception in violation of SDCL 22-30A-1 (theft), SDCL 22-30A-17 (grand theft), and SDCL 22-3-3 (aiding, abetting, or advising). Count One alleged Otobhiale took or exercised unauthorized control over the property of another with the intent to deprive that person of the property by deception by preventing that person from acquiring information that would affect the person's judgment of a transaction. SDCL 22-30A-3(2). Count Two mirrored Count One, except that it alleged that Otobhiale's role in the deception created or reinforced a false impression of law, value, intention, or other state of mind. SDCL 22-30A-3(1).

[¶3.] The events underlying the indictment began in November 2019 when a man representing himself as William Brooks became Facebook friends with M.D., a 76-year-old widow. Brooks created the appearance that he was a 65-year-old white male serving overseas as a military physician.

[¶4.] On November 26, 2019, Brooks contacted M.D. and requested she send him $1,200 because he could not access his money in "the war zone." He promised to repay her and convinced her not to involve her family. Brooks instructed M.D. to send cash by FedEx to John Pastorek at a specific address in Irvington, New Jersey. M.D. testified that she understood that Pastorek was Brooks's contact in the United States. M.D. sent the cash as instructed on December 6, 2019. Over the next month and a half, M.D. continued receiving requests for cash from Brooks. Ultimately, M.D. sent approximately $14,000 in cash in seven packages addressed to Pastorek at the same New Jersey address.

[¶5.] When M.D. attempted to send cash an eighth time, her bank intervened and contacted the Bon Homme County Sheriff's Office. Sheriff Mark Maggs convinced M.D. to send a package containing paper, rather than money, to the same New Jersey address on January 23, 2020. Sheriff Maggs provided the package tracking information to the Irvington, New Jersey Police Department so they could apprehend the package recipient. On January 24, 2020, Irvington Police Sergeants Maurice Taylor and Brandis Puryear observed Otobhiale accept the package addressed to John Pastorek. Sergeants Taylor and Puryear arrested and searched Otobhiale. The search revealed Otobhiale possessed multiple credit/debit cards that did not belong to him.[1] Sergeants Taylor and Puryear also observed a mailbox on Otobhiale's house with a note taped to it that said "John Pastorek."

---

1. Three of the cards had the name John Pastorek, one had the name Eric Jaffe, and one had the name Frances Carter.

#29664

[¶6.] During an interview with law enforcement following his arrest, Otobhiale explained he was receiving money for a friend, Nelly, who resided in Africa. Otobhiale explained that he would then forward the cash to a "money guy," who transferred it to Nelly. Otobhiale said that he retained fifteen percent of the cash he received. Otobhiale explained that while living at a previous residence, he picked up mail belonging to John Pastorek and used that mail to obtain Pastorek's identifying information. Otobhiale admitted using Pastorek's name and information to apply for and receive a Chime debit card[2] in Pastorek's name. Otobhiale denied knowing M.D. When asked if he knew William Brooks, Otobhiale responded:

> That's probably the name Nellie [sic] is using to catfish[3] that lady. I don't know if you understand. Like, for instance, he can -- Nellie [sic] can say he is William Brooks while he's talking to the lady, so he can make her send him –

Although an officer interrupted Otobhiale before he could finish this sentence, Otobhiale continued speaking and revealed he catfished on his own, using the name John Edward. When asked if people had sent him money, Otobhiale admitted that he had just started catfishing and had been unsuccessful.

---

2. Otobhiale explained that this debit card was limited to the amount of cash deposited on to it. He admitted that he placed his portion of the cash onto a card in Pastorek's name. He further explained that he had opened the three cards in his possession that were in Pastorek's name. As for the other cards, he stated he found them on the floor and put them in his wallet to make it "puff."

3. A "catfish" is "a person who sets up a false personal profile on a social networking site for fraudulent or deceptive purposes." *Merriam-Webster*, https://www.merriam-webster.com/dictionary/catfish (last visited June 7, 2022).

-3-

[¶7.] Otobhiale was transported to South Dakota after being taken into custody on a South Dakota arrest warrant. Before trial, the State filed a notice of intent to offer the recording of Otobhiale's post-arrest interview with New Jersey law enforcement. Otobhiale resisted by filing a motion in limine, seeking to exclude specific portions of the interview and any statements relating to:

> 1. Use by Defendant of any other person's name, other than John Pastorek;
> 2. How Defendant came to use the name of John Pastorek;
> 3. That Defendant used the name of John Pastorek to acquire cash or credit cards;
> 4. That Defendant may have committed crimes by using names other than his own; or
> 5. Other crimes Defendant may have committed in the past or which he was previously or is currently charged with.

The State responded by filing a notice of intent to introduce SDCL 19-19-404(b) and *res gestae* evidence, seeking to admit testimony and evidence of conduct relating to:

> 1. Defendant's use of the name John Pastorek.
> 2. The victim sending packages containing money on 7 occasions to John Pastorek at [a specific address in] Irvington, New Jersey [ ].
> 3. The eighth mailing to John Pastorek did not contain money but was addressed to the same address. This package was sent by [FedEx] on January 23, 2020, with the assistance of the Bon Homme County Sheriff, Mark Maggs. Sheriff Maggs coordinated with the Irvington Police Department to be present when [FedEx] delivered the package. Sgt. Maurice Taylor and Sgt. Brandis Puryear were present at the address when the package was delivered. During a brief surveillance, the officers observed the Defendant accept the package from the [FedEx] employee. The Defendant was immediately detained.
> 4. During the search incident to the arrest at the police headquarters, the Defendant was found to be in possession of multiple credit cards/debit cards in the name of John Pastorek.
> 5. During the recorded interview of Defendant, the Defendant explained how he discovered and was using the name of John Pastorek to acquire cash or credit/debit cards.

6. The State intends to introduce the photo of the mailbox with a handmade name tag for John Pastorek. This mailbox was on the Defendant's home.

[¶8.]     The circuit court denied Otobhiale's motion in limine and approved the State's notice of intent to offer SDCL 19-19-404(b) and *res gestae* evidence. The circuit court concluded that the evidence went to identity, intent, preparation, and plan and fell within the permitted uses of such evidence identified in SDCL 19-19-404(b)(2). Alternatively, the circuit court determined the evidence would be admissible as *res gestae*.

[¶9.]     At trial, the State's case-in-chief began with M.D. testifying about her correspondence with Brooks, his requests for money, and her compliance with those requests. Sheriff Maggs testified that after M.D.'s bank contacted him, he intervened to convince M.D. to send a cashless package and arranged the involvement of the Irvington, New Jersey Police Department to help apprehend the package recipient. Before Sergeant Puryear's testimony, the circuit court read two instructions to the jury.[4] During Sergeant Puryear's direct examination, a video of

---

4.     Instruction number two stated:

> Evidence may be introduced that the defendant may have committed an offense other than the charges he is facing here.
>
> Although evidence of this nature is allowed, it may be used only to show motive, intent, absence of mistake or accident, common scheme, or identity of the person charged. You may not consider it as tending to show in any other respect the defendant's guilt of the offense with which the defendant is charged.
> Before determining whether to consider this evidence, you must first determine if a preponderance of the evidence established that the defendant committed the other wrongs.

(continued . . .)

Otobhiale's entire interview was received into evidence and played for the jury. The State then sought to introduce testimony from Connor Rucktaeschel, a jail inmate with Otobhiale. Rucktaeschel claimed that the previous night, during an argument in the jail, Otobhiale had told him that "he scams people for a living and he'll scam my mom too." After balancing the potential prejudicial effect against the probative value of the evidence under SDCL 19-19-403, the circuit court excluded Rucktaeschel's testimony, a text message Rucktaeschel sent to his mother, and a video of the jail argument.

[¶10.] During his testimony, Otobhiale admitted that he had been receiving money for Nelly but asserted that he would never scam people. He reiterated that he was unaware of his involvement in a scam. Following Otobhiale's testimony, the State again asked to call Rucktaeschel. This time, the circuit court permitted Rucktaeschel's testimony, concluding that Otobhiale's testimony had opened the door and changed the SDCL 19-19-403 balancing to favor admission. During Rucktaeschel's testimony, the text message he sent to his mother was also received into evidence.[5] In response, Otobhiale testified again and denied making those statements to Rucktaeschel. During Otobhiale's cross-examination, a video of the

---

(. . . continued)

> You are not required to consider this evidence and whether you do is a matter within your exclusive province.

5. The text message read: "He said he scams people for a living, and he'll 'scam my mom too.'"

jail argument[6] was received into evidence and published to the jury. After the video, both sides rested.

[¶11.]     Otobhiale then made a motion for judgment of acquittal as to both counts. Otobhiale argued that the State offered no evidence that he possessed the requisite specific intent. The circuit court denied the motion, concluding "that there is sufficient evidence to present to the jury [on both counts]." The jury found Otobhiale guilty of Count Two.[7]

[¶12.]     Before sentencing, Otobhiale submitted a motion for a new trial based on newly discovered evidence. Otobhiale's attorney explained that a third inmate, Trenton Kutz, indicated he was present during the jail argument and never heard Otobhiale make any statements about scamming people or threats to scam Rucktaeschel's mother. Otobhiale's attorney did not attach an affidavit of Kutz's expected testimony to support the motion. The State resisted the motion, arguing the new evidence was merely cumulative or impeaching and unlikely to result in an acquittal.

[¶13.]     The circuit court noted the lack of an affidavit supporting the motion and indicated it would assume that Kutz's testimony would be as described in Otobhiale's motion. The circuit court denied the motion for new trial, explaining that the newly discovered evidence was cumulative or impeaching because Otobhiale had already expressly refuted Rucktaeschel's claims. Because there was

---

6.     The video did not contain any audio.

7.     The two counts were charged alternatively. The jury did not enter a verdict regarding Count One. The circuit court entered a judgment of acquittal on Count One, to which the State consented.

other evidence from which the jury could reasonably conclude Otobhiale possessed the requisite intent, the circuit court also concluded that the newly discovered evidence was unlikely to produce an acquittal. The circuit court invited Otobhiale to file an affidavit supporting the motion "so that the record is clear as to what [Kutz] would have stated." Otobhiale did not do so.

[¶14.] After denying Otobhiale's motions, the circuit court entered a judgment of conviction as to Count Two and sentenced Otobhiale to six years in the penitentiary. Otobhiale appeals, raising three issues which we restate below.

## Analysis and Decision

### 1. Whether the circuit court abused its discretion when it denied Otobhiale's motion in limine.

[¶15.] "We review a circuit court's decision to admit or deny other act evidence under SDCL 19-19-404(b) (Rule 404(b)) for an abuse of discretion." *State v. Nohava*, 2021 S.D. 34, ¶ 13, 960 N.W.2d 844, 849 (citing *State v. Phillips*, 2018 S.D. 2, ¶ 13, 906 N.W.2d 411, 415). "This [standard] applies as well to rulings on motions in limine." *JAS Enters., Inc. v. BBS Enters., Inc.*, 2013 S.D. 54, ¶ 21, 835 N.W.2d 117, 125 (quoting *Ferebee v. Hobart*, 2009 S.D. 102, ¶ 12, 776 N.W.2d 58, 62). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *State v. Holler*, 2020 S.D. 28, ¶ 10, 944 N.W.2d 339, 342 (quoting *State v. Delehoy*, 2019 S.D. 30, ¶ 22, 929 N.W.2d 103, 109).

[¶16.] "'*Res gestae*' is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime . . . ." 29A Am. Jur. 2d Evidence § 858 Westlaw (database updated May 2022). "'*Res*

*gestae,'* also known as intrinsic evidence, is evidence of wrongful conduct other than the charged criminal conduct offered for the purpose of providing the context in which the charged crime occurred." *Id.* Courts have classified evidence of other crimes as intrinsic evidence in the following circumstances:

> [when the evidence] provides the jury with a complete story of the charged crime[;] [i]ts absence would leave a chronological or conceptual void in the story of the crime[;] [i]t arose out of the same transaction or series of transactions as the charged offense[;] [i]t is so blended or connected with the crime charged that it incidentally involves it, explains the circumstances surrounding it, or tends logically to prove an element of the charged crime.

2 Weinstein's Federal Evidence § 404.20[2][c] (2d ed. 2021); *see, e.g.*, *United States v. Reed*, 978 F.3d 538, 543 (8th Cir. 2020) (completes the story); *United States v. O'Dell*, 204 F.3d 829, 833–34 (8th Cir. 2000) (arising out of the same transaction); *United States v. Jackson*, 913 F.3d 789, 792 (8th Cir. 2019) (so blended or connected it involves, explains, or proves the charged crime). Because "Rule 404(b) governs the admissibility of extrinsic evidence only[,] . . . evidence intrinsic to the charged offense is *not* excluded by Rule 404(b)." 2 Weinstein's Federal Evidence, *supra*, at § 404.20[2][b] (emphasis added); *see, e.g.*, *United States v. Guzman*, 926 F.3d 991, 1000 (8th Cir. 2019).

[¶17.]     This Court has adopted a similar approach to *res gestae* or intrinsic evidence. "Evidence, when a part of the *res gestae*, is proper if it is related to and tends to prove the crime charged although it also proves or tends to prove the defendant guilty of another crime." *State v. Wright*, 2009 S.D. 51, ¶ 55, 768 N.W.2d 512, 531 (citing *State v. Goodroad*, 1997 S.D. 46, ¶ 10, 563 N.W.2d 126, 130). This Court has "approved the admission of other crimes where such evidence is 'so

blended or connected' with the one[s] on trial . . . that proof of one incident involves the other[s]; or explains the circumstances; or tends logically to prove any element of the crime charged." *State v. Hoadley*, 2002 S.D. 109, ¶ 37, 651 N.W.2d 249, 258 (quoting *State v. Andrews*, 2001 S.D. 31, ¶¶ 9–11, 623 N.W.2d 78, 81). Furthermore, this Court has concluded that Rule 404(b) is inapplicable to *res gestae* evidence. *See State v. Floody*, 481 N.W.2d 242, 252 (S.D. 1992) (concluding that because evidence constituted part of the circumstances of the charged crime, 404(b) is not implicated because other acts evidence is not being introduced).

[¶18.] The evidence at issue included law enforcement's observations of Otobhiale accepting M.D.'s package addressed to Pastorek and of a mailbox attached to Otobhiale's home with Pastorek's name affixed to it. The evidence also included Otobhiale's admissions during his interview with New Jersey law enforcement. Otobhiale admitted that he obtained Pastorek's identifying information, used it to apply for and obtain multiple cards in Pastorek's name, received and accepted multiple packages addressed to Pastorek containing cash, and placed Pastorek's name on a mailbox at the entrance to his home. He also admitted that he had unsuccessfully attempted to catfish.

[¶19.] Otobhiale contends that this evidence is not connected with the charged conduct in this case and therefore is not *res gestae*. However, his argument ignores the State's burden to prove that Otobhiale acted with the specific intent to defraud M.D. by deception.[8] In essence, the State needed to show that Otobhiale,

---

8. Under Count One, the State needed to prove the deception "prevent[ed the victim] from acquiring information which would affect the [victim's] judgment
(continued . . .)

by portraying himself as John Pastorek, intended to reinforce the false impression created by "Brooks" (a name Otobhiale believed was being used by Nelly) to prevent M.D. from understanding the nature of the deceptive scheme. Otobhiale told the jury he never intended to defraud anyone. He portrayed his involvement in Nelly's scheme as innocent and unknowing. "[S]tate of the mind is rarely prove[n] by direct evidence." *State v. Jucht*, 2012 S.D. 66, ¶ 29, 821 N.W.2d 629, 637 (quoting *State v. Tofani*, 2006 S.D. 63, ¶ 45, 719 N.W.2d 391, 404) (internal quotation marks omitted). Here, the State sought to prove that Otobhiale acted with the intent to defraud M.D. by pretending to be Pastorek, which prevented her from acquiring information that would affect her judgment of the transaction (Count One) or by creating or reinforcing a false impression (Count Two).

[¶20.] The evidence offered by the State that Otobhiale acquired and used Pastorek's name both to receive packages from M.D. and to retain his portion of the cash completed the picture of the circumstances of the deception. It helped the jury understand what happened to the cash packages M.D. mailed to Pastorek and provided context for them to assess Otobhiale's intent. *See State v. Good Plume*, 2011 S.D. 27, ¶¶ 2, 13–14, 799 N.W.2d 717, 718, 722 (admitting a threatening letter sent before an assault as *res gestae* because it detailed matters incidental to the case and gave context to essential facts). These acts were "'so closely connected . . . to constitute part of the [same] transaction, and without knowledge of which the

---

(. . . continued)
of the transaction." SDCL 22-3A-3(2). Under Count Two, the State needed to prove the deception "create[d] or reinforce[d] a false impression, including a false impression as to law, value, intention or other state of mind." SDCL 22-30A-3(1).

main fact might not be properly understood.'" *Id.* ¶ 13, 799 N.W.2d at 722 (quoting *State v. Fisher*, 2010 S.D. 44, ¶ 19, 783 N.W.2d 664, 671); *see also United States v. Day*, 700 F.3d 713, 729 (4th Cir. 2012) (permitting evidence of defendant's use of fake names and foreign bank accounts where transfers to accounts involved fraudulent funds and took place during the wire fraud conspiracy and names were used to conceal involvement in scheme because the evidence "arose out of the same series of transactions as the charged offenses and was necessary to complete the context of the crime").

[¶21.] Similarly, the evidence obtained during Otobhiale's apprehension by law enforcement in New Jersey was intrinsic to the crimes alleged. It explained what happened to the packages and why the police apprehended Otobhiale. *See State v. Stark*, 2011 S.D. 46, ¶ 26, 802 N.W.2d 165, 173 (concluding evidence that law enforcement officers were watching the defendant based on a tip regarding a suspicious individual in a white van was admissible as *res gestae* because the evidence helped explain the circumstances of the case by providing context and explaining why law enforcement followed defendant).

[¶22.] The circuit court also assessed the admissibility of the evidence at issue under SDCL 19-19-404(b).[9] On appeal, Otobhiale argues that the circuit court

---

9. SDCL 19-19-404(b) provides, in pertinent part, that:

> (1) Prohibited uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent,

(continued . . .)

abused its discretion by admitting evidence under SDCL 19-19-404(b) regarding Otobhiale's acquisition and possession of credit/debit cards in others' names, acquisition and use of John Pastorek's name, and his post-arrest interview statements about catfishing. Otobhiale contends that his possession of the credit cards in other people's names was not relevant to the offenses charged against him and too remote in time. Similarly, Otobhiale contends that his admission that he had personally tried catfishing was not relevant to the charges against him. Lastly, Otobhiale claims the circuit court did not complete a balancing of the probative value of the evidence against its prejudicial effect before admitting the evidence.

[¶23.] The circuit court concluded that the disputed evidence regarding acquisition and possession of cards in other people's names, acquisition and use of John Pastorek's name, and Otobhiale's post-arrest statements about catfishing was admissible under several permitted uses identified in SDCL 19-19-404(b)(2), including intent, preparation, plan, and identity. Contrary to Otobhiale's contention, the record demonstrates that the circuit court determined that this evidence was relevant and would not result in "any unfair prejudice."

[¶24.] Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that [the person] acted in conformity therewith." *State v. Birdshead*, 2015 S.D. 77, ¶ 57, 871 N.W.2d 62, 81 (quoting SDCL 19-19-404(b)). "However, other act evidence 'may . . . be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan,

---

(. . . continued)

preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

knowledge, identity, absence of mistake, or lack of accident.'" *Id.* (quoting SDCL 19-19-404(b)(2)). To determine the admissibility of other act evidence, the circuit court must "conduct a two-part balancing test on the record[.]" *Id.* (citing *State v. Scott*, 2013 S.D. 31, ¶ 28, 829 N.W.2d 458, 468). The court must first determine that the "other-act evidence is relevant to some material issue in the case other than character (factual relevancy). Second, the court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice (logical relevancy)." *Id.* (citations omitted).

[¶25.] "Evidence is relevant if (a) [i]t has any tendency to make a fact more or less probable than it would be without the evidence; and (b) [t]he fact is of consequence in determining the action." SDCL 19-19-401. "Evidence is unduly prejudicial if it persuades the jury in an unfair or illegitimate manner, but not merely because it harms the other party's case." *State v. Bowker*, 2008 S.D. 61, ¶ 41, 754 N.W.2d 56, 69. "Additionally, the State must present sufficient evidence for a jury to conclude by a preponderance of the evidence 'that the other acts occurred and that the defendant was the actor.'" *State v. Snodgrass*, 2020 S.D. 66, ¶ 27, 951 N.W.2d 792, 802 (quoting *Phillips*, 2018 S.D. 2, ¶ 20, 906 N.W.2d at 417).

[¶26.] "[W]here specific intent is an element of an offense, proof of similar acts may be admitted to carry that burden even if the defense to the charge is a complete denial." *State v. Champagne*, 422 N.W.2d 840, 843 (S.D. 1988) (citing *State v. Means*, 363 N.W.2d 565, 568 (S.D. 1985)). "When considering whether admission of . . . [other] acts is probative of intent, trial courts should compare, among other factors, the similarity between the . . . [other] acts and the crimes with

which the defendant is charged." *State v. Chamley*, 1997 S.D. 107, ¶ 12, 568 N.W.2d 607, 612 (citing *State v. Titus*, 426 N.W.2d 578, 579–80 (S.D. 1988); *State v. Moeller*, 1996 S.D. 60, ¶ 28, 548 N.W.2d 465, 475). In addition to considering the similarity between the other acts and the charged conduct, "[t]rial courts should also consider the age of the . . . [other] acts." *Id.* ¶ 16, 568 N.W.2d at 613 (citing *Titus*, 426 N.W.2d at 580).

[¶27.] As discussed above, one of the elements the State needed to prove was that Otobhiale acted with the specific intent to defraud M.D. Otobhiale consistently denied that he possessed this intent and denied any intentional participation in a scamming operation. His admitted involvement in catfishing was evidence of his intent to defraud because it rebutted his denial of any culpable intent. In *State v. Thomas*, 2019 S.D. 1, ¶ 23, 922 N.W.2d 9, 16, when analyzing a similar issue of admissibility under 404(b) to prove intent, we concluded that defendant's internet searches related to "teens" and "jailbait" rebutted defendant's claims he was interested in older women and corroborated defendant's intent to engage in sexual conduct with minors. The same analysis applies to Otobhiale's possession of credit cards belonging to other people and the use of other people's names. As the circuit court concluded, his conduct was relevant to prove his intent and did not result in any unfair prejudice.

[¶28.] Because all the disputed evidence either constitutes *res gestae* or was admissible under the permitted use of showing intent identified in SDCL 19-19-404(b) as discussed above, the circuit court did not abuse its discretion when it denied Otobhiale's motion in limine.

> **2.      Whether the circuit court abused its discretion when it denied Otobhiale's motion for a new trial based on newly discovered evidence.**

[¶29.]      Otobhiale requested a new trial based on his contention that Kutz would contradict Rucktaeschel's testimony about what Otobhiale said during their argument in the jail.  The circuit court concluded the evidence was cumulative or impeaching and unlikely to produce an acquittal.

[¶30.]      To prevail on a motion for a new trial based upon newly discovered evidence, a defendant must prove:

> (1) the evidence was undiscovered by the movant at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) that it would probably produce an acquittal; and (4) that no lack of diligence caused the movant to fail to discover the evidence earlier.

*State v. Corean*, 2010 S.D. 85, ¶ 18, 791 N.W.2d 44, 51 (quoting *State v. Shepard*, 2009 S.D. 50, ¶ 20, 768 N.W.2d 162, 167).

[¶31.]      "[N]ew trial motions based on newly discovered evidence request extraordinary relief; they should be granted only in exceptional circumstances and then only if the requirements are strictly met." *Id.* ¶ 18, 791 N.W.2d at 51–52 (quoting *State v. Gehm*, 1999 S.D. 82, ¶ 15, 600 N.W.2d 535, 540).  "Whether a new trial motion should be granted is left to the sound discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion." *Id.* ¶ 18, 791 N.W.2d at 52 (quoting *Gehm*, 1999 S.D. 82, ¶ 12, 600 N.W.2d at 539).

[¶32.]      Generally, newly discovered evidence that is cumulative or impeaching cannot alone provide the basis for a new trial.  *State v. Strahl*, 2009 S.D. 54, ¶ 11,

768 N.W.2d 546, 549; *State v. Lodermeier*, 481 N.W.2d 614, 628 (S.D. 1992).

However, "[n]ewly discovered impeachment evidence may be so powerful that, if it were to be believed by the trier of fact, it could render the witness'[s] testimony totally incredible." *Strahl*, 2009 S.D. 54, ¶ 12, 768 N.W.2d at 549 (quoting *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992)). If the impeached testimony was uncorroborated and provided the only evidence of an essential element, the impeachment evidence could be of such a material weight that it would probably produce an acquittal. *Id.*

[¶33.]       Otobhiale's motion for new trial was premised on the incorrect assertion that without Rucktaeschel's testimony, there is no evidence in the record that Otobhiale knew M.D. was being scammed. On the contrary, as discussed above, there is significant circumstantial evidence from which a finder of fact could conclude that Otobhiale understood the nature of the scam perpetrated on M.D. and intentionally participated in that scheme. Otobhiale testified and told the jury that he did not scam people. Rucktaeschel's testimony directly disputed that assertion. Otobhiale testified again and directly contradicted Rucktaeschel's testimony. The motion for new trial was based solely on the assertion that Kutz would also contradict Rucktaeschel's testimony. It was an attempt to undermine Rucktaeschel's testimony through impeachment. It is cumulative because Otobhiale's testimony already contradicted Rucktaeschel's testimony. Although Kutz, as a non-party, may have been perceived as more credible about what was said during the argument, his potential testimony only related to a narrow topic—

whether Otobhiale stated he scammed people and would scam Rucktaeschel's mother.

[¶34.] Otobhiale relies on *Strahl*, for the proposition that "[t]here are times when newly discovered impeachment evidence is significant and should be given more weight." *See id.* ¶ 11, 768 N.W.2d at 549. In *Strahl*, the circuit court granted a new trial where it was later discovered that a fellow inmate, Black Crow, who testified at Strahl's trial, had testified to a fabricated confession made by his cellmate in a separate trial and was subsequently convicted of perjury. *Id.* ¶ 13, 768 N.W.2d at 550. The circuit court concluded that the newly discovered evidence "was of such a character that it would have shattered Black Crow's credibility in [Strahl's] case." *Id.* In reaching this conclusion, the circuit court noted how the jury would have likely discredited Black Crow's testimony entirely because the circumstances surrounding the earlier, perjured testimony and those present in Strahl's case were remarkably similar. *Id.* ¶¶ 14–15 , 768 N.W.2d at 550. Because the State's "evidence of premeditation came predominately from Black Crow's testimony," the circuit court concluded that the newly discovered evidence would probably have produced an acquittal of Strahl on his first-degree murder charge. *Id.* ¶ 15, 768 N.W.2d at 550. On appeal, this Court found no abuse of discretion and affirmed the circuit court's decision to grant a new trial. *Id.* ¶ 17, 768 N.W.2d at 551.

[¶35.] In this case, even if Kutz testified that he did not hear the threat Rucktaeschel described, this evidence would not "effectively eradicate[] the credibility of a witness," as in *Strahl*. *See id.* ¶ 11, 768 N.W.2d at 549 (citing *United*

*States v. Atkinson*, 429 F. Supp. 880, 885 (E.D.N.C. 1977)). Instead, the testimony would simply provide the jury with another witness besides Otobhiale, contradicting Rucktaeschel about what Otobhiale said during the jail argument. Kutz's testimony would not discredit Rucktaeschel's testimony entirely but instead impact the weight of that evidence. *See id.* ¶ 16, 768 N.W.2d at 551 ("That the jury would have disregarded *all* of Black Crow's testimony means not that it would have ignored just the parts that could not be corroborated by physical evidence, but that the jury would have rejected everything."). Because Kutz's potential testimony was merely cumulative or impeaching, it was not material. Even if this additional testimony were to cause the jurors to conclude that Otobhiale had not told Rucktaeschel that he scammed people, there was significant other evidence in the record from which the jury could conclude that Otobhiale possessed culpable intent. Consequently, the circuit court did not abuse its discretion when it denied Otobhiale's motion for a new trial.

> **3.** **Whether the circuit court erred in denying Otobhiale's motion for judgment of acquittal and whether there is sufficient evidence to support the conviction.**

[¶36.] Otobhiale challenges his conviction for aiding and abetting or advising grand theft by deception. Otobhiale acknowledges that grand theft by deception occurred, and M.D. was a victim. He contends there was insufficient evidence to prove that he aided, abetted, or advised the commission of that grand theft. Specifically, he argues the circuit court erred when it denied the motion for judgment of acquittal because there was insufficient evidence to show he possessed the requisite specific intent to defraud M.D.

[¶37.]     "The denial of a motion for a judgment of acquittal is reviewed de novo." *State v. Taylor*, 2020 S.D. 48, ¶ 42, 948 N.W.2d 342, 355 (citing *State v. Quist*, 2018 S.D. 30, ¶ 13, 910 N.W.2d 900, 904). "When conducting our review, we 'determine whether the evidence was sufficient to sustain the conviction.'" *State v. Stone*, 2019 S.D. 18, ¶ 38, 925 N.W.2d 488, 500 (quoting *Quist*, 2018 S.D. 30, ¶ 13, 910 N.W.2d at 904). "In measuring the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Most*, 2012 S.D. 46, ¶ 29, 815 N.W.2d 560, 568 (quoting *Stark*, 2011 S.D. 46, ¶ 21, 802 N.W.2d at 172). "We do 'not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence on appeal.'" *Nohava*, 2021 S.D. 34, ¶ 27, 960 N.W.2d at 853 (quoting *State v. Ware*, 2020 S.D. 20, ¶ 12, 942 N.W.2d 269, 272). "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *Stone*, 2019 S.D. 18, ¶ 38, 925 N.W.2d at 500 (citation omitted).

[¶38.]     "All elements of a crime, including intent . . . , may be established circumstantially." *State v. Jensen*, 2007 S.D. 76, ¶ 9, 737 N.W.2d 285, 288 (quoting *State v. Guthrie*, 2001 S.D. 61, ¶ 48, 627 N.W.2d 401, 421). "[C]ircumstantial evidence is critically important in [determining the intent of an aider and abettor] because a state of the mind is rarely proved by direct evidence." *Jucht*, 2012 S.D. 66, ¶ 29, 821 N.W.2d at 637 (quoting *Tofani*, 2006 S.D. 63, ¶ 45, 719 N.W.2d at 404). "[W]hen the underlying criminal statute prescribes a particular mental state for the

principal, a jury must find that a defendant possessed the underlying mental state required of the principal in order to be convicted under South Dakota's aider and abettor statute." *Id.* ¶ 27, 821 N.W.2d at 636.

[¶39.] The jury convicted Otobhiale of aiding and abetting or advising grand theft in violation of SDCL 22-30A-3(1). Under this statute, the offender must act with the specific intent to defraud. The circuit court's instructions correctly advised the jurors that the State needed to prove that Otobhiale "acted with the intent to aid, abet or advise with the specific intent to defraud [M.D.]"

[¶40.] Otobhiale contends that "[t]here was no evidence presented to the jury that showed [Otobhiale] had any knowledge that his friend, Nelly, was involved in a scam to steal money from M.D. or that [Otobhiale] intended to help Nelly scam M.D." Additionally, he argues that because M.D. did not testify that the use of John Pastorek's name affected her decision to send the money, the evidence does not support the conviction.

[¶41.] In his post-arrest interview with law enforcement, Otobhiale admitted to helping his friend Nelly by receiving the money mailed to John Pastorek. He explained that after subtracting his share, he delivered the remaining funds to a person he described as the "money man," who then transferred it to Nelly. Although Otobhiale told the jury that he did not know that Nelly was scamming M.D., his testimony contradicted his statements to law enforcement where he acknowledged "[t]hat's probably the name Nellie [sic] is using to catfish that lady." From this evidence, a reasonable juror could conclude that Otobhiale knew that Nelly created a false impression about his identity and convinced M.D. to send

money to John Pastorek, his contact in the United States. Otobhiale accepted these cash packages knowing that he was not John Pastorek. By doing so, he aided and abetted Nelly's deception by perpetuating Nelly's false impressions with the specific intent to defraud M.D.

[¶42.]     The circuit court did not err when it denied the motion for judgment of acquittal because there was sufficient evidence that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Our de novo review of the record demonstrates sufficient evidence to support the conviction.

## Conclusion

[¶43.]     The circuit court did not abuse its discretion by denying Otobhiale's motion in limine or the motion for a new trial based on newly discovered evidence. The circuit court did not err when it denied Otobhiale's motion for acquittal because there was sufficient evidence to support the conviction. We affirm.

[¶44.]     JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.